237 N.J. Super. 240 (1989)
567 A.2d 282
IN THE MATTER OF THE PETITION OF PATERSON COUNSELING CENTER, INC. FOR RELIEF FROM "ATTACHMENT C" OF THE STANDARD TERMS AND CONDITIONS TO THE OPERATING BUDGET FOR FISCAL YEAR 1989.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1989.
Decided December 11, 1989.
*241 Before Judges J.H. COLEMAN, BRODY and SKILLMAN.
Cynthia C. McNeill argued the cause for appellant Paterson Counseling Center, Inc.
Elizabeth Zuckerman, Deputy Attorney General, argued the cause for respondent New Jersey State Department of Health (Peter N. Perretti, Jr., Attorney General, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; Elizabeth Zuckerman, on the brief).
James H. Landgraf argued the cause for amicus Curiae, Substance Abuse Treatment Providers, Inc. (Montgomery, McCracken, Walker & Rhoads, attorneys; Leonard F. Costa and James H. Landgraf, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal requires us to decide whether the Department of Health (Department) has the authority to regulate the composition of boards of trustees of grantees under the Narcotic and Drug Abuse Control Act of 1969, N.J.S.A. 26:2G-1 et seq. (the Act). We hold that the Department has this authority, but that it must be exercised pursuant to the rulemaking process of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 et seq.
The Act authorizes the Department to conduct programs for the treatment of drug addiction. N.J.S.A. 26:2G-5(b). For many years, this power was exercised through drug treatment facilities operated by state employees. However, the Department concluded in 1983 that the state's drug treatment programs could be more efficiently operated by converting the state facilities to privately operated facilities funded by grants from the State. Consequently, the Department encouraged its employees who were involved in conducting drug treatment programs to establish private non-profit corporations to perform this responsibility. Appellant Paterson Counseling Center, *242 Inc. was formed in 1984 as one of fourteen non-profit corporations which became recipients of annual grants from the Department to operate private drug treatment facilities.[1]
Initially, the Department did not impose any restrictions upon the composition of boards of trustees of its grantees. But in 1986 the Department circulated a new "Attachment C" to the terms and conditions of its grants, which precluded any employee of a grantee, other than its executive director, from sitting on its board and required an appropriate number of board members to represent the "ethnic, social and economic composition" of the local community. A cover memorandum indicated that the Department realized "the necessity for a phasing in period for compliance." Consequently, the Department did not enforce this directive rigorously in connection with grants for the fiscal year running from February 1, 1987 to January 31, 1988.
The Department adopted an expanded version of this directive with respect to grants for the fiscal year running from February 1, 1988 to January 31, 1989, which read as follows:
The Grantee's Board of Directors shall have an appropriate number of members but no less than seven representing the local community's ethnic, social and economic composition. Members of the Board with the sole exception of the Executive Director shall not be in the employ of the Grantee. Relatives of the Executive Director shall not serve on the Board.
On November 25, 1987 appellant filed a petition with the Commissioner of Health seeking a declaration that the part of attachment C regulating the composition of boards of trustees of grantees is invalid. The Commissioner rejected this petition by a letter dated February 2, 1988, which gave the following reasons for the directives contained in attachment C:
These terms were developed for specific public purposes. They were meant to assure that drug treatment centers become more attuned to the needs of the *243 community they serve, and better able to gain support of that community for its activities. Hence the governing body is to be drawn from, and representative of, the ethnic, social and economic make-up of the community. Further, to provide broad and independent representation of the interests of the community, the Board members should not be employed by the facility itself (with the exception of the Executive Director), nor should they be related to the Executive Director. This restriction on Board membership by relatives of the Executive Director serves the additional purpose of avoiding the potential for a close-knit group to arrange business dealings of the agency for their personal financial benefit.
The Commissioner also advised appellant that the Department would not process its grant application for the February 1, 1988 to January 31, 1989 fiscal year until it submitted an acceptable plan and short timetable for compliance with the disputed portion of attachment C.
Appellant responded by requesting that the matter be transmitted to the Office of Administrative Law as a contested case. The Commissioner denied the request. This appeal followed.
During the pendency of this appeal, appellant has made changes in the composition of its board of trustees which the Department has accepted as complying with the disputed portions of attachment C. However, appellant represented at oral argument that it had changed the composition of its board solely in response to the threatened loss of funding from the Department and that its board would be changed back to its prior composition if it were to prevail on this appeal. In addition, the Deputy Attorney General appearing for the Department represented that the portion of attachment C regulating the composition of the boards of grantees, or a modified version thereof, would be a condition of grants to private drug treatment facilities next year. Under these circumstances, the parties agree that their controversy is a continuing one and that this appeal is not moot. See Guttenberg Savings & Loan Ass'n v. Rivera, 85 N.J. 617, 622-623 (1981).

I
The threshold issue on this appeal is whether the Department is authorized to regulate the composition of boards of *244 trustees of private drug treatment facilities which are grantees under the Act.
The Department's authority to conduct drug treatment programs is derived from its general powers under the Act, which include the power:
To promote, develop, establish, co-ordinate and conduct unified programs for education, prevention, diagnosis, treatment, aftercare, community referral, rehabilitation and control in the field of drug addiction, ... and, in co-operation with such other Federal, State, local and private agencies as are necessary and within the amount made available by appropriation therefor implement and administer such programs. [N.J.S.A. 26:2G-5(b)].
* * * * * * * *
To make agreements with the Federal Government, political subdivisions, public agencies or private agencies to do or cause to be done that which may be necessary, desirable or proper to carry out the purposes and objectives of this article within the amounts made available therefor by appropriation, gift, grant, devise or bequest. [N.J.S.A. 26:2G-5(k)].
Beyond this general authorization to the Department to cooperate, to make grants and to enter into agreements with private agencies, the Act contains no specific provisions regarding the terms and conditions under which the Department may fulfill its statutory responsibilities by grants to private treatment facilities. However, "[t]he grant of authority to an administrative agency is to be liberally construed to enable the agency to accomplish the Legislature's goals." United Building & Construction Trades Council v. Camden, 88 N.J. 317, 325 (1982), rev'd on other grounds, 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984). Consequently, "the courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978); see also In re Request for Solid Waste Utility Customer Lists, 106 N.J. 508, 516 (1987). It is especially appropriate to construe an agency's powers expansively where the Legislature has defined such powers in broad, general language, with the evident expectation that the agency will adopt more detailed regulations to implement the underlying statutory objectives. As former Chief *245 Justice Weintraub aptly observed while sitting in the Superior Court:
With the increasing complexity of governmental activity, the capacity of legislative bodies to perform the full legislative role diminishes and often disappears.... Frequently, the most the legislative body can do is to provide a basic plan of the solution, leaving to others the task of preparing and revising the detailed drawings. [Wagner v. Mayor, etc., Newark, 42 N.J. Super. 193, 213 (Law Div. 1956), rev'd on other grounds, 24 N.J. 467 (1957)].
See also Matter of Egg Harbor Associates, 94 N.J. 358, 364-372 (1983); New Jersey Ass'n of Health Care Facilities v. Finley, 83 N.J. 67, 78-79 (1980); Motyka v. McCorkle, 58 N.J. 165, 176-179 (1971). Therefore, it must be presumed that the Legislature contemplated that the Department would spell out the terms and conditions under which grants would be made, including the qualifications of grantees, in light of the underlying legislative policies and the agency's expertise with respect to drug treatment programs.
We conclude that the Department, in exercising its broad powers under the Act, may impose reasonable requirements with respect to the persons who may operate private drug treatment facilities. Our courts have recognized in a variety of contexts that public agencies may decline to enter into contractual arrangements where a private contractor lacks moral probity or where the award of the contract may impair the public's confidence in the agency. See, e.g., Keyes Martin & Co. v. Director, Div. of Purchase & Property, 99 N.J. 244, 251-262 (1985); Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972); 613 Corp. v. State of New Jersey, Div. of State Lottery, 210 N.J. Super. 485 (App.Div. 1986). For example, the Court held in Keyes Martin that the Lottery Commission could refuse to award a contract for advertising services to a particular bidder "based on the appearance of wrongdoing attributable to a possible conflict of interest involving the bidder and a member of the contracting agency." 99 N.J. at 262. We believe that similar considerations support the conclusion that the Department has the implied statutory authority to impose reasonable *246 restrictions upon the composition of the boards of trustees of its grantees.

II
The further issue presented by this appeal is whether any such restrictions must be adopted pursuant to the rulemaking procedures of the APA.
N.J.S.A. 52:14B-2(e) provides in pertinent part that
"Administrative rule" or "rule" ... means each agency statement of general applicability and continuing effect that implements or interprets law or policy.
Synthesizing prior decisions, the Supreme Court stated in Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313, 331 (1984) that an agency determination should be adopted as an administrative rule if "all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process." The features characteristic of an administrative rule are that it:
(1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. [Id. at 331-332].
The Metromedia criteria are employed not only to distinguish the circumstances in which an agency must proceed by rulemaking rather than by adjudication but also to identify generally the circumstances in which "rulemaking procedures are necessary in order to validate agency actions or determinations." Woodland Private Study Group v. State of New Jersey, Dep't of Environmental Protection, 109 N.J. 62, 68 (1987). Consequently, the Metromedia criteria were applied in In re Request for Solid Waste Utility Customer Lists, supra, *247 and Bd. of Ed., City of Plainfield v. Cooperman, 209 N.J. Super. 174 (App.Div. 1986), aff'd 105 N.J. 587 (1987), "to distinguish rulemaking ... from `informal action'." Woodland Private Study Group v. State of New Jersey, Dep't of Environmental Protection, supra, 109 N.J. at 68.
The Metromedia criteria compel the conclusion that the Department's directive regarding the composition of boards of trustees of its grantees should have been adopted as an administrative rule. First, although it directly applies only to the relatively small group of grantees under the Act, the directive also impacts upon persons who receive treatment at grantees' facilities or who are affected in any way by their operations. In any event, even regulatory requirements which are "highly particularized" in their impact may be required to be adopted as rules. Bally Mfg. Corp. v. New Jersey Casino Control Comm'n, 85 N.J. 325, 334 (1981), app. dism. 454 U.S. 804, 102 S.Ct. 77, 70 L.Ed.2d 74 (1981); Boller Beverages, Inc. v. Davis, 38 N.J. 138, 151-152 (1962). Second, the directive applies "generally and uniformly" to all grantees. Third, because it was set down as a condition of eligibility for grants in future years, the directive is prospective in operation. Fourth, as indicated by the discussion in section I of this opinion, the directive was not "expressly provided by or clearly and obviously inferable from" the Act. Fifth, since the Department funded private drug treatment facilities from 1984 through 1986 without attempting to restrict the composition of their boards, the directive represents a change from the Department's past position. Sixth, as indicated by the Commissioner's February 2, 1988 letter, the directive reflects a general policy decision of the Department.
Although the Metromedia criteria point to the conclusion that the Department's directive regarding the composition of the boards of its grantees should have been adopted as a rule, the Department argues that the directive was simply a "grant condition" which could be imposed by "informal agency action." In support of this argument, the Department points to the *248 Court's citation in In re Request for Solid Waste Utility Customer Lists to 2 K. Davis, Administrative Law Treatise, § 13.4 at 485-486, for the proposition that "informal action ... includes ... contracting" 106 N.J. at 519, and it suggests that the imposition of conditions for the receipt of government grants is a form of "contracting" which is immune from the rulemaking requirements of the APA.
We have no doubt that many  indeed, probably most  aspects of agency action relating to grants may be performed without first adopting rules. Grants include many detailed provisions which do not set forth decisions regarding general administrative policy and which apply only in specific limited circumstances. Such provisions cannot reasonably be considered to be "agency statements of general applicability and continuing effect that implement or interpret law or policy." N.J.S.A. 52:14B-2(e).
But this does not mean that any requirement included in a grant is automatically exempted from the rulemaking requirements of the APA, even though it has the characteristics of a rule described in Metromedia.[2] In modern government, significant policy determinations are frequently adopted and implemented through grants of government funds. Indeed, grants to recipients and providers of services are the primary means through which many public assistance programs, such as Aid to Families with Dependent Children and Medicaid, are administered. Consequently, the rulemaking requirements of the APA cannot be avoided simply by articulating a general agency policy as a condition of a grant.
The basic conditions of eligibility to receive a government grant or benefit constitute general governmental policy which should be set forth in the agency's enabling legislation or in a *249 rule adopted pursuant to the APA. Maticka v. Atlantic City, 216 N.J. Super. 434, 452-453 (App.Div. 1987); see Morton v. Ruiz, 415 U.S. 199, 232-236, 94 S.Ct. 1055, 1073-1075, 39 L.Ed.2d 270 (1974); White v. Roughton, 530 F.2d 750 (7th Cir.1976); Brow v. Secretary of Health & Human Services, 627 F. Supp. 1467 (D.Vt. 1986). A directive regarding the composition of the board of trustees of a potential grantee is such a condition of eligibility. Indeed, there is a similarity between the limitations imposed by the Department of Health on the composition of grantees under the Act and the limitations imposed by the Lottery Commission on other business activities of lottery agents, which we concluded in 613 Corp. v. State of New Jersey, Div. of State Lottery, supra, 210 N.J. Super. at 497-500, should have been adopted as rules pursuant to the APA. See also Dep't of Labor v. Titan Construction Co., 102 N.J. 1, 12-18 (1985) (adoption of rule under APA is prerequisite to the debarment from government contracting of the principal of a corporation which failed to comply with Prevailing Wage Act). Therefore, the Department's directive regarding the composition of boards of trustees under the Act can only be imposed through the adoption of rules pursuant to the APA.

III
Finally, appellant argues that the restrictions on the composition of its board imposed by attachment C are arbitrary, capricious and impermissibly vague. We have no occasion to consider this argument, because the restrictions imposed by attachment C must be invalidated on the ground that they were not adopted as a rule. If the Department proposes the adoption of a rule reimposing these restrictions, appellant and other grantees will have the opportunity to express their objections in accordance with N.J.S.A. 52:14B-4(a). If the Department adopts these or similar restrictions as a rule and appellant is dissatisfied with the contents, it may file a new appeal.
*250 For the reasons previously expressed, we invalidate the part of attachment C which regulates the composition of boards of trustees of grantees under the Act.
NOTES
[1] The Department states that the private drug treatment facilities were funded by "contracts" with the State from 1984 to 1987 and by state "grants" since 1987. Any change which may have occurred in the method of funding these facilities is not material to the issues presented on this appeal.
[2] The federal administrative procedure act exempts "grants" from its rulemaking requirements. 5 U.S.C. § 553(a)(2). The New Jersey Administrative Procedure Act contains no similar exemption.