265 N.J. Super. 591 (1993)
628 A.2d 379
GERALDINE SCOTT, PLAINTIFF-RESPONDENT,
v.
STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 12, 1993.
Decided July 7, 1993.
*593 Before Judges HAVEY, STERN and BROCHIN.
Cheryl A. Maccaroni, Deputy Attorney General, argued the cause for appellant (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Maccaroni, on the brief).
Steven L. Kessel argued the cause for respondent (Drazin & Warshaw, attorneys; Mr. Kessel, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
The New Jersey Division of Youth and Family Services (DYFS) administers the State's foster care program. N.J.S.A. 30:4C-26(a); N.J.A.C. 10:120-1.1, -1.2. Its efforts include providing financial help to foster parents to defray some of the costs of providing foster care. N.J.S.A. 30:4C-27, -29. At one time, DYFS paid for insurance to indemnify foster parents against financial losses from damage to their property negligently caused by their foster children. Subsequently, the insurance was replaced by a State-funded Liability Program for Foster Parents in place of the insurance. The present case requires us to decide the proper forum for adjudicating a foster parent's claims under that program.
N.J.S.A. 30:4C-26(a) directs the Commissioner of Human Services to promulgate rules and regulations necessary to effectuate the purposes of the statutes which govern foster care. But the Liability Program for Foster Parents was not established by regulation. The Department of Human Services has promulgated its provisions only in a brochure which DYFS distributes to persons who are or are about to become foster parents. The following provisions are pertinent to the present suit:
IIIB.... .
B. Damage to Property of Foster Parent

*594 This program shall cover damage to real and personal property of a foster parent caused by a foster child and occurring while the foster child is in the care and custody of the foster parent. ....
C. Damage to Dwelling of Foster Parent
Where an act of a foster child results in damage to the dwelling of the foster [parents' home] by fire or other similar catastrophic acts such that it or any part of it is uninhabitable, the limit of reimbursement is increased from $25,000 to $100,000 for such loss. However, such reimbursement is specifically made excess to any coverage available to the foster parent(s) under any policy or insurance.
....
XII. Regulations
The State shall be responsible for the preparation of procedures to be utilized in the implementation of this program.
Plaintiff Geraldine Scott was a foster parent. She submitted a claim under the Liability Program for Foster Parents seeking indemnification for the financial loss which she suffered from damage to her home, allegedly caused by a fire negligently started by her foster child when he left a hot iron on a bed. A senior claims investigator in the Bureau of Risk Management denied her claim, explaining that there was "no conclusive evidence to determine who actually left the iron on which ultimately was the cause of this fire," but that Ms. Scott could appeal to a deputy attorney general whom he named. She appealed, and the deputy attorney general requested further information, promising to inform Ms. Scott's attorney when his investigation had been completed.
When fourteen more months had elapsed without any further response, Ms. Scott filed a complaint against the State in the Law Division, seeking compensation under the Foster Parents Liability Claims Program. The State answered and moved to transfer the suit to the Office of Administrative Law. The Law Division denied the motion for transfer. We granted the State's application for leave to appeal that ruling to our court.
On appeal, the State argues the following points:
Point I. The complaint of the plaintiff should be dismissed because plaintiff has failed to exhaust administrative remedies available to her.

*595 Point II. The creation of the liability program for foster parents was not an ultra vires act, and therefore the Appellate Division should reverse the trial court's decision not to transfer this matter to the office of administrative law.
Point III. Jurisdiction rests with the Appellate Division to review final decisions or actions of any state agency or officer pursuant to R. 2:2-3(a)(2) and therefore this matter should be remanded to the agency for transmittal to the office of administrative law where a full evidentiary hearing can take place.
We reject the State's contention that the brochure promulgating the Foster Parent Liability Program is "an intra-agency statement which is exempt from rule-making." For the following reasons, we hold that the Department of Human Services was legally required to establish the program by administrative rules promulgated in accordance with the Administrative Procedure Act, N.J.S.A. 52:14B-1 through 21.
The Supreme Court discussed the intra-agency exception to rule-making as follows in Woodland Private Study Group v. State, 109 N.J. 62, 73, 533 A.2d 387 (1987):
The appropriate limitation on the intra-agency exception can be distilled from a comparison of the underlying purposes of the rulemaking procedural requirements and the intra-agency exception. The "essential purpose of * * * notice and comment opportunities is to reintroduce public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies." [Batterton v. Marshall, 648 F.2d 694, 703 (1980)] The intra-agency exception is "designed to permit the executive branch to communicate with itself and with other units of government without delay or bureaucratic entanglement." [citation omitted]
The Foster Parent Liability Program is not an instance of "the executive branch ... communicat[ing] with itself and with other units of government...." It is a quasi-legislative initiative by DYFS to implement its conception of what assistance should be provided to foster parents and how that assistance should be furnished. See N.J.S.A. 52:14B-2(e) ("Administrative rule ... means each agency statement of general applicability and continuing effect that implements or interprets law or policy...."). The program is intended to be available to all foster parents and to apply to them uniformly. It was established to apply prospectively after its effective date. It furnishes material assistance to foster parents of a kind and under conditions not expressly *596 provided by statute, and it represents a material and significant change from the agency's previous practice of providing insurance coverage. In other words, it has all of the hallmarks of an administrative rule as defined by Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 331-32, 478 A.2d 742 (1984). Cf. Stratford Nursing Ctr. v. D.M.A.H.S., 215 N.J. Super. 479, 483, 522 A.2d 442 (App.Div. 1986) (An agency "policy" applicable to all similarly situated entities, prescribing a legal standard not expressed in any duly adopted regulation and not obviously inferable from the enabling statute, is a rule); Petition of Paterson Counseling Ctr., 237 N.J. Super. 240, 247, 567 A.2d 282 (App.Div. 1989) (A directive conditioning fund grants on the recipients' boards of trustees' mirroring the composition of their communities is a rule). The State concedes that the Foster Parent Liability Program was not promulgated in conformity with the Administrative Procedure Act. Consequently, if the status of the Program depended upon the validity of its promulgation as an administrative rule, it would be a nullity. Metromedia, Inc., supra.
When DYFS furnished Ms. Scott with its brochure describing the Foster Parent Liability Program, the State made her an offer. Like the employees who accepted the terms of their employers' policy manual by continuing to work, Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284, 301-304, 491 A.2d 1257 modified on other grounds, 101 N.J. 10, 499 A.2d 515 (1985), Ms. Scott accepted the terms of the indemnity program described in the DYFS brochure by commencing or continuing her duties as a foster parent. If there is any question whether she relied on the brochure, her reliance is presumed. Id. 99 N.J. at 304, 491 A.2d 1257, citing Anthony v. Jersey Cent. Power & Light Co., 51 N.J. Super. 139, 145-46, 143 A.2d 762 (App.Div. 1958). The legal consequence was a unilateral contract; the State bound itself to indemnify Ms. Scott if she is entitled to indemnification under the terms of the Foster Parent Liability Program as described it its brochure. Ms. Scott is therefore entitled to deal with the Program as founded on contract.
DYFS has been given express statutory power to

*597 expend such sums as may be necessary for the reasonable and proper cost of maintenance [of children in foster care], including board, lodging, clothing, medical, dental, and hospital care, or any other similar or specialized commodity or service as the needs of any such child may require....

[N.J.S.A. 30:4C-27.]
The Agency could reasonably conclude that providing indemnity to foster parents against financial losses negligently caused by the children in their care was a "specialized commodity or service" incident to the children's maintenance. The agency therefore possesses the statutory authority to contract to indemnify foster parents, either by insurance or directly from State funds, just as it possesses the authority to contract for other items of "board, lodging, clothing, medical, dental, and hospital care."
The Foster Parents Liability Program brochure includes a provision which reads as follows:
Disputes Under the Program
Where a dispute as to the existence or amount of coverage arises, the Foster Parent or his representative shall make application to the Attorney General, providing such information or statements as the foster parent may deem appropriate. Prior to any final decision the foster parent shall be entitled to a statement of reason as to why payment or defense was declined and an opportunity to comment on these. The Attorney General[1], or his designee, shall then issue a decision, which shall be considered a final decision of a State administrative agency and appealable under the Rules of Court. [Emphasis added.]
We emphasize that the Department of Institutions and Agencies is empowered to establish its Foster Parents Liability Program by administrative rules which may provide for agency adjudications of claims for indemnity. Such a provision would make an indemnity claim, if it is disputed, a "contested case" as defined by N.J.S.A. 52:14B-2(b), and the final agency determination would be appealable as of right to this court pursuant to R. *598 2:2-3(a)(2).[2]See Application of Orange Savings Bank, 172 N.J. Super. 275, 282-86, 411 A.2d 1150 (App.Div.), appeal dismissed, 84 N.J. 433, 420 A.2d 339 (1980). However, so long as indemnification depends on contract, a foster parent has a statutory right to have his or her claim for indemnification "heard by a judge sitting without a jury," i.e. in a trial division of the Superior Court. N.J.S.A. 59:13-4 ("Contract claims against the State shall be heard by a judge sitting without a jury."); Frapaul Constr. Co. v. Transportation Dep't of N.J., 175 N.J. Super. 84, 89-92, 417 A.2d 592 (App.Div. 1980). To the extent that the language of the brochure quoted above implies a different forum, it is contrary to statute and void or voidable. Indeed, the brochure itself states, "Terms of this program which are in conflict with the statutes of the State of New Jersey are hereby amended to conform to such statute."
We also disagree with the State's argument that the Law Division should have dismissed this case because Ms. Scott had not exhausted her administrative remedies. First of all, as a practical matter, she did everything she could to exhaust her administrative remedies. She followed the agency's instructions to appeal from an adverse decision to a deputy attorney general. She waited for a decision until further delay might have jeopardized her claim under N.J.S.A. 59:13-5(b), which requires a contract suit against the State to be filed within two years after the accrual of the claim. Secondly, the doctrine of exhaustion of administrative remedies assumes the existence of a valid administrative procedure, and we have rejected that assumption. Thirdly, in the absence of an express statutory or contractual exhaustion requirement, exhaustion of administrative remedies is not a pre-requisite to a contract suit against the State under the Contractual Liability Act. See W.V. Pangborne & Co. v. N.J. DOT, 116 N.J. *599 543, 557, 562 A.2d 222 (1989); Frapaul Construction Co., supra, 175 N.J. Super. at 92, 417 A.2d 592.
The order of the Law Division declining to transfer this matter to the Office of Administrative Law is correct and it is therefore affirmed.
NOTES
[1] The brochure does not explain why the Attorney General is designated as the decision maker for the Division of Youth and Family Services in the Department of Institutions and Agencies.
[2] We assume that the adoption of an appropriate procedure by rule would tend to prevent the neglectful treatment accorded Ms. Scott's claim in this instance.