690 A.2d 1036

PATRICIA A. COOPER, GENE M. DANNENFELSER, HERB LEARY, AUDREY TURSI AND JOAN YOUNG, PLAINTIFFS–APPELLANTS/CROSS–RESPONDENTS, v. THE MAYOR AND BOROUGH COUNCIL FOR THE BOROUGH OF HADDON HEIGHTS, DEFENDANTS–RESPONDENTS/CROSS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued December 3, 1996—Decided March 13, 1997.

Before Judges DREIER [1], D'ANNUNZIO and NEWMAN.

*Bruce A. Wallace* argued the cause for appellants/cross-respondents (*DeBois, Sheehan, Hamilton & Levin,* attorneys; *Daniel M. Replogle, III,* on the brief).

*John B. Kearney* argued the cause for respondents/cross-appellants (*Kearney & Brady,* attorneys; *Mr. Kearney,* on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

Plaintiffs appeal from an adverse judgment in this action in lieu of prerogative writs.

The first issue is whether a personnel manual adopted by the Borough of Haddon Heights (Borough) supersedes "An Ordinance Fixing The Salaries And Wages To Be Paid To The Officers And Employees Of The Borough of Haddon Heights For The Year 1994." The second issue is whether the salary ordinance violated the rights of two of the plaintiffs' under *N.J.S.A.* 40A:9–165

---

[1] With the consent of counsel, Judge Dreier was added to the panel after oral argument.

because the ordinance denied them "without good cause an increase in salary given to all other municipal officers and employees." *Ibid.*

Plaintiff Cooper is the Borough's Deputy Clerk; plaintiff Dannenfelser is the Borough's Fire Chief; plaintiff Leary is the Borough's Construction Official; plaintiff Tursi is the Borough's Tax Collector; and plaintiff Young is the Borough's Clerk. The record establishes that the Borough "adopted" a Policy and Procedure Manual (Manual) in the 1970's. There is no evidence that it was adopted by ordinance or as a result of collective bargaining under the New Jersey Employer–Employee Relations Act. *N.J.S.A.* 34:13A–1 *et seq.* There is evidence, however, that from time to time parts of it were amended by resolution. The parties have not included the entire Manual in the record, but the record does contain its table of contents. The Manual deals with recruitment; appointment; discipline and termination; classification and compensation, such as pay periods, hours of work, overtime and shift differentials; benefits; leaves; and work rules.

Section 1.0 of the Manual is entitled "General Personnel Policies." Section 1.4 defines "Department Heads." All plaintiffs qualify as "Department Heads." Section 1.4 then contains the clause in question:

Department Heads will receive all benefits no less than any contracted or non-contracted employee with the exception of overtime.

The Borough's 1994 salary ordinance gave plaintiffs a 2% salary increase, though the Chief of Police, the Captain of Police, and all members of the police department received 6% increases. Plaintiffs contend that the Manual is an enforceable contract, under *Woolley v. Hoffmann–LaRoche, Inc.,* 99 *N.J.* 284, 491 *A.*2d 1257, *modified on other grounds,* 101 *N.J.* 10, 499 *A.*2d 515 (1985), which the salary ordinance breached.

The trial court held that *Woolley* applied to public sector employment and, therefore, the Manual was a binding contract. Defendants cross-appeal from that determination. The court, however, determined that the clause in question was not ambigu-

ous and the phrase "all benefits" did not include salary. The court noted that the Manual distinguished between "compensation" and "benefits," limiting the latter to health and pensions.

We do not agree that the clause is unambiguous. It is inartfully drawn and lacks clarity. Although it uses the word "benefits," it contains an exception for overtime which is an element of the Manual's section on compensation. Moreover, there was testimony that historically the Borough construed "benefits" to include compensation. Those facts cloud the trial court's finding that "benefits" did not include salary.

We address, therefore, *Woolley*'s applicability to this clause in the Manual.

In *Woolley, supra*, our Supreme Court held that

when an employer of a substantial number of employees circulates a *manual that, when fairly read, provides that certain benefits are an incident of the employment (including, especially, job security provisions), the judiciary, instead of "grudgingly" conceding the enforceability of those provisions, should construe them in accordance with the reasonable expectations of the employees.*

[99 *N.J.* at 297–98, 491 *A.*2d 1257 (citation omitted) (emphasis added).]

Accordingly, "[t]he key consideration in determining whether an employment manual gives rise to contractual obligations is the reasonable expectations of the employees." *Witkowski v. Thomas J. Lipton, Inc.*, 136 *N.J.* 385, 392, 643 *A.*2d 546 (1994). Such expectations arise where an employment manual delineating specific benefits is presented as official policy and widely distributed. *Id.* at 392–93, 643 *A.*2d 546. It may be inferred from the creation and wide distribution of an employment manual that an employer intended it to be read and considered by all its employees in the hopes of furthering some particular interest, such as gaining the cooperation and loyalty of its employees. *Id.* at 395–96, 643 *A.*2d 546. Once an employer has undertaken to furnish its employees with such manuals, fairness dictates that the arbitrary denial to an employee of any of the benefits contained therein will not be tolerated. *Woolley, supra*, 99 *N.J.* at 299–300, 491 *A.*2d 1257. However, "[a]n effective disclaimer by the employer may overcome the implication that its employment manual constitutes an

enforceable contract. . . ." *Nicosia v. Wakefern Food Corp.*, 136 *N.J.* 401, 412, 643 *A.*2d 554 (1994).

We have alluded to *Woolley* principles in three public sector cases. In *Korostynski v. State, Div. of Gaming Enforcement*, 266 *N.J.Super.* 549, 630 *A.*2d 342 (App.Div.1993), this court, in deciding a discovery issue, assumed the applicability of *Woolley* to public entity defendants, suggesting that the plaintiff suing the DGE could base his claim of wrongful discharge upon his reasonable expectations arising from the DGE's Policies and Procedures Manual. *Id.* at 556, 630 *A.*2d 342. Similarly, in *Scott v. State*, 265 *N.J.Super.* 591, 628 *A.*2d 379 (App.Div.1993), likening the situation to one involving a *Woolley* claim, we determined that the State had bound itself to the terms of an indemnity program for foster parents described in a DYFS brochure, which terms the plaintiff had accepted by commencing or continuing her duties as a foster parent. *Id.* at 596, 628 *A.*2d 379.

Most recently, a panel of this court, over a dissent by Judge Skillman, determined that principles underlying the *Woolley* doctrine were equally applicable to public entities such as the State. *Walsh v. State*, 290 *N.J.Super.* 1, 674 *A.*2d 988 (App.Div.1996). In *Walsh*, the majority held that an oral promise to promote an Assistant Deputy Public Defender within one year's time, made at the time of hiring in order to induce acceptance of a lower level job, was enforceable by the State employee. *Id.* at 12, 674 *A.*2d 988. Specifically, the *Walsh* majority observed that

> Over the past decade, our courts have been willing to recognize implied-in-fact contracts in the at-will employment setting. *Likewise, public entities may be bound by contracts implied-in-fact. See N.J.S.A.* 59:13–3 (providing that "[t]he State of New Jersey . . . waives its sovereign immunity from liability arising out of . . . a contract implied in fact").
>
> [*Id.* at 10, 674 *A.*2d 988 (citation omitted) (emphasis added).]

Judge Skillman concluded that the Public Defender or the Public Defender's representative, as public officials, did not have the statutory authority to enter into an enforceable agreement regarding a future promotion. *Walsh, supra*, 290 *N.J.Super.* at 13–17, 674 *A.*2d 988 (Skillman, J.A.D., dissenting).

■ Those cases, however, did not involve a municipality's authority to establish the salaries of its employees and officers. That authority can be exercised only by adoption of an ordinance. *N.J.S.A.* 40:48–1; *N.J.S.A.* 40A:9–165. The latter statute also provides that "[s]alaries, wages or compensation fixed and determined by ordinance may, from time to time, be increased, decreased or altered by ordinance." *Ibid. See Howard v. Mayor of Paterson,* 6 *N.J.* 373, 377–79, 78 *A.*2d 893 (1951) (holding that health officer and sanitary inspector could not recover salary increases established by resolution because power to establish compensation must be exercised by ordinance); *Heil v. Mayor and Bd. of Comm'rs of City of Wildwood,* 11 *N.J. Misc.* 171, 173, 164 *A.* 868 (Sup.Ct.1933) (setting aside resolution reducing city clerk's salary because such reduction could be achieved only by ordinance); *see also Jersey City v. Department of Civil Ser.,* 10 *N.J.Super.* 140, 147–48, 76 *A.*2d 830 (App.Div.1950) (explaining that "[i]t is settled law that under *R.S.* 40:48–1, a municipal office or position, if not created by statute, can come into being only by ordinance of the local governing body. The sense of the statute is that, because the creation of offices and positions involves an increase of the financial burden of local government, the power is exercisable only by ordinance, a deliberative process requiring notice to the public.") (citation omitted), *aff'd,* 7 *N.J.* 509, 81 *A.*2d 777 (1951); *Davaillon v. City of Elizabeth,* 121 *N.J.L.* 380, 381–82, 2 *A.*2d 369 (Sup.Ct.1938) (ruling that city could not create position of assistant city clerk by resolution because under statute, power to create municipal office and to establish compensation may be exercised only by ordinance).

We deem Judge Skillman's observations in his dissenting opinion in *Walsh* to be relevant in the present case:

> The majority's conclusion that subordinates of the Public Defender made an enforceable promise to promote plaintiff to the position of Assistant Deputy Public Defender I rests upon private sector employment decisions that "have been willing to recognize implied-in-fact contracts in the at-will employment setting." (maj. op. at 10, 674 *A.*2d at 993). *See Woolley v. Hoffmann–LaRoche, Inc.,* 99 *N.J.* 284, 491 *A.*2d 1257 (1985). However, the relationship between an Assistant Deputy Public Defender and the Public Defender, like the relationship between other public

officials and the agencies appointing them, "is not *ipso facto* contractual in character," *Espinos v. Township of Monroe,* 81 *N.J.Super.* 283, 288, 195 *A.2d* 478 (App.Div.1963), but is instead controlled by the statutes pursuant to which the public official has been appointed. Consequently, "[i]t is basic that 'one accepting a public office or position is presumed to do so with full knowledge of the law as to salary, compensation and fees,'" and that "all limitations prescribed must be strictly observed." *Shalita v. Township of Washington,* 270 *N.J.Super.* 84, 91, 636 *A.2d* 568 (App.Div.1994) (quoting *Espinos v. Township of Monroe, supra,* 81 *N.J.Super.* at 288, 195 *A.2d* 478). Therefore, whatever subjective understanding plaintiff may have had of the statements made by the Public Defender's representatives at the time of his appointment, he is presumed to have accepted the position of Assistant Deputy Public Defender II with full knowledge of the Public Defender's continuing authority to decide whether to promote him as well as the supervisory authority of the Commissioner of Personnel and the Salary Adjustment Committee with respect to any recommended promotion or salary adjustment.

[*Walsh, supra,* 290 *N.J.Super.* at 15–16, 674 *A.2d* 988 (Skillman, J.A.D., dissenting).] [2]

As Judge Skillman noted, conditions of public employment are controlled by the applicable statutes. Public employees accept their positions subject to those statutes, which cannot be avoided by reliance on concepts of contract law developed in the context of private sector disputes.

We draw two conclusions from the statutory requirement that salaries, wages and compensation be established by ordinance. Because the Borough did not adopt the Manual by ordinance, it could not bind the Borough regarding the future level of municipal compensation. On the other hand, even if the Manual had some contractual force regarding levels of compensation, it could not preempt the municipality's power under *N.J.S.A.* 40:48–1 and *N.J.S.A.* 40A:9–165 to establish by ordinance a different compensation scheme.

We conclude that the 1994 salary ordinance did not violate any enforceable contract rights enjoyed by plaintiffs.

[At the request of the Appellate Division panel the balance of the opinion, involving the application of *N.J.S.A.* 40A:9–165 has

---

[2] Subsequent to the preparation of this opinion, the Supreme Court reversed "substantially for the reasons expressed in Judge Skillman's dissenting opinion." *Walsh v. State,* 147 *N.J.* 595, 689 *A.2d* 131 (1997).

been omitted. The Appellate Division affirmed the trial judge's determination that plaintiffs Tursi and Young were not entitled to additional salary increases under that statute.]

The trial court's determination that the Manual was a binding contract, expressed in paragraph two of the judgment, is reversed. In all other respects, the judgment is affirmed.