703 A.2d 333

TERESA TRIANO, SUSAN KERLIN, EDWARD PIORKOWSKI, DI-
ANE KELLY, DOREEN HUTCHERSON, RANDOLPH TURNER,
JOYCE THOMAS, FRANCES BAVARO, PATRICIA D'ELIA, AND
RAYMOND RAYHON, PLAINTIFFS–APPELLANTS, v. DIVI-
SION OF STATE LOTTERY, ITS EMPLOYEES, AGENTS
AND/OR SERVANTS, VIRGINIA E. HAINES, EXECUTIVE DI-
RECTOR, JOHN GALLAGHER, CONTROLLER, AND JOHN
DOE (1–5), DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 3, 1997—Decided December 11, 1997.

116

Before Judges SHEBELL, D'ANNUNZIO and A.A. RODRIGUEZ.

*Raymond L. Hamlin* argued the cause for appellants (*Hunt, Hamlin & Ridley*, attorneys; *Mr. Hamlin*, on the brief).

*Peter M. Ullman*, Deputy Attorney General, argued the cause for respondents (*Peter Verniero*, Attorney General of New Jersey, attorney; *Mary C. Jacobson*, Assistant Attorney General, of counsel; *Mr. Ullman*, on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On March 20, 1996, Teresa Triano and Susan Kerlin filed a complaint in the Law Division against defendants, Division of State Lottery ("State Lottery"), Virginia E. Haines, its Executive Director, and John Gallagher, its Controller. On May 24, 1996, the complaint was amended to add as plaintiffs, Edward Piorkowski, Diane Kelly, Doreen Hutcherson, Randolph Turner, Joyce Thomas, Frances Bavaro, Patricia D'Elia, and Raymond Rayhon. In their complaints, plaintiffs alleged they were winners of the New Jersey Lottery Lucky Anniversary game, but that

> [t]he defendant State Lottery breached its agreement with [each plaintiff] when it advertised and offered [them] and other members of the public the opportunity to win various amounts up to and including $250,000.00, with the purchase of the Lucky Anniversary Lottery Ticket and when it thereafter failed to pay [them] the [amount] which [was] revealed on [the ticket].

Plaintiffs also alleged that defendants, Haines and Gallagher, "failed to properly manage, direct or oversee the Lucky Anniversary Lottery game to ensure that false and misleading information was [not] presented to the public as an inducement to purchase lottery tickets."

On December 26, 1996, defendants moved for summary judgment seeking dismissal because the Law Division was not the proper forum to review the matter; plaintiffs failed to exhaust their administrative remedies; plaintiffs failed to file notices of claim as required under the Tort Claims Act and Contractual Liability Act; and plaintiffs' claim for negligent misrepresentation against Haines and Gallagher must fail under *N.J.S.A.* 59:3–10. Defendants asserted that to exhaust their administrative remedies, plaintiffs were required to bring their claims to the Executive Director of the State Lottery for a final review, and that only after obtaining a final decision, could plaintiffs appeal to this court.

On February 7, 1997, the Law Division judge granted defendants' motion holding that the plaintiffs failed to exhaust all administrative remedies prior to filing their complaint. The motion judge observed:

> I think it requires, the ... head of the Lottery Commission, to make a ruling.... In that way the expertise of the Commission, which is substantial, they're the ones that devise all the rules for these games.... And it's an important function here because not only are we dealing with these people who claim to be winners, but a lot of other people.... So it's an important issue. And I think the Lottery Commissioner should deal with it first. And then there's an appeal to the Appellate Division. There is no stop at the Law Division. The Law Division doesn't get involved. It's straight Commission decision and then to the Appellate Division. The Appellate Division can then deal on the legal issue that the Lottery Commission may or may not decide. I can't say that this [is] a foregone conclusion. There may be enough ... confusion about this ticket so that the Director might make an exception or might decide that certain people were misled by the rules. It doesn't seem that way. But ... I don't think it's inconceivable.

The judge also held that plaintiffs' claim was not cognizable under the Tort Claims Act and the Contractual Liability Act, and that Haines and Gallagher had immunity from plaintiffs' negligent misrepresentation claim. Plaintiffs appeal and we affirm.

Between January 1995 and April 1995, plaintiffs purchased Lucky Anniversary tickets from the State Lottery for five dollars each. Among the rules contained on each ticket, it was provided that "[a]ll winners, tickets and transactions are subject to New Jersey Lottery rules and regulations and State Law. All prize

awards are subject to claim procedures, validation tests, and other applicable requirements of the New Jersey Lottery." After purchasing a ticket, the player had to scratch off an opaque material to reveal certain hidden symbols and dollar amounts. Each ticket contained three games, one of which was the bonus game. The following appeared on the tickets:

"Scratch off Bonus area, reveal *a* 25th symbol and win prize shown below automatically."

[Emphasis added.]

Plaintiffs claim that defendants issued an advertising brochure which stated, "Find our Anniversary symbol and win prize shown instantly." Plaintiffs claim that as a result of the brochure they were "induced to purchase the ticket."

When plaintiffs scratched off the bonus section, their tickets revealed a symbol (present, candle, cake, hat) and the amount of their prize ($5,000 to $250,000). Plaintiffs claimed that in accordance with the rules, they won the amount revealed in the bonus section, but when they went to the State Lottery to claim their winnings, defendants claimed they did not possess winning tickets because none revealed *the* "25th" symbol. Plaintiffs argued that since the wording on the ticket provided that a person only had to reveal *a* 25th symbol, any symbol that appeared in the bonus area was a winning symbol.

In August 1995, Triano and Kerlin sent a letter to the State Lottery seeking payment for their alleged winning tickets. In the letter, they argued that the bonus language was misleading, and should have stated, "reveal *the* symbol '25' and win a prize." (emphasis added). They argue that it would have been clear then that the "only manner in which a person could win anything in the bonus area is if the symbol '25th' is revealed." They further argued that if the only way to win the bonus award is to reveal the "25th" symbol, "then the game itself is misleading and fraudulent."

In August 1995, the State Lottery responded to the letter:

[I]n order to win this particular game the *graphic* "25th" must appear in the bonus circle in order to win.

. . . .

> The ticket purchased by your client is not a winner as it lacks the graphic "25th" in the bonus play area.

. . . .

> The statement appearing on the face of the ticket adjacent to the Bonus play circle establishes that the "25th" symbol graphic is the *only* winning symbol for the Bonus game.

Plaintiffs did not seek to have their claim heard by the Executive Director of the State Lottery. They contend that since only the interpretation of ambiguous contract language is involved, they did not have to exhaust their administrative remedies before filing their complaint, and that the Law Division should have heard the matter.

The State Lottery Law, *N.J.S.A.* 5:9–1 to –25, (the "Act") empowers the State Lottery to promulgate rules and regulations regarding, among other things:

> (4) The manner of selecting the winning tickets or shares.

. . . .

> (12) Such other matters necessary or desirable for the efficient and economical operation and administration of the lottery and for the convenience of the purchasers of tickets or shares and the holders of winning tickets or shares.
>
> [*N.J.S.A.* 5:9–7(a).]

Pursuant to the above, the Lottery Commission promulgated regulations "covering the procedures and safeguards that must be followed in order to claim a prize." *Karafa v. New Jersey State Lottery Comm'n*, 129 *N.J.Super.* 499, 503, 324 *A.*2d 97 (Ch.Div. 1974).

*N.J.A.C.* 17:20–3.1 provides:

> In the event that a dispute arises involving the ownership of a winning lottery ticket or the validity of such a ticket, the Director [of the Division of the State Lottery] shall schedule and hold a hearing in accordance with *N.J.A.C.* 1:1.
>
> [Emphasis added.]

We do not consider section 3.1 to grant the Director the authority to resolve the issues presented in this dispute, as these issues involve neither the ownership nor validity of the tickets. However, the Lucky Anniversary game rules clearly state under Section 12–Final Decision, that "[t]he Director shall make all final deci-

sions regarding the awarding of prizes." We deem this to be a sufficient grant of authority to empower the Director to hear and decide this matter on behalf of the State Lottery.

The general rule regarding a party's obligation to exhaust the administrative remedies of a state agency is codified in *R.* 2:2–3(a)(2):

[A]ppeals may be taken to the Appellate Division as of right ... (2) to review final decisions or actions of any state administrative agency or officer ... except that review pursuant to this subparagraph shall not be maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise.

█   The following three goals are served by the exhaustion requirement:

(1) the rule ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2) administrative exhaustion allows the parties to create a factual record necessary for meaningful appellate review; and (3) the agency decision may satisfy the parties and thus obviate resort to the courts.

[*City of Atlantic City v. Laezza*, 80 *N.J.* 255, 265, 403 *A.2d* 465 (1979).]

█   The first goal is "particularly important where the ultimate decision rests upon the factual determinations lying within the expertise of the agency or where agency interpretation of the relevant statutes or regulations is desirable." *Magliochetti v. State*, 276 *N.J.Super.* 361, 374, 647 *A.2d* 1386 (Law Div.1994). The second goal is significant, as we are not a court of record and must depend on a record developed below. The third goal

requires the parties to pursue available procedures to their appropriate conclusion and correlatively await[ ] their final outcome before seeking judicial intervention. This is so because interruption of the administrative process is not justifiable to any greater extent than interference with the trial process by interlocutory appeals. The expertise of an administrative agency may not be exercised or known until it renders its final decision and usually due deference is accorded such expertise upon judicial review.

[*Id.* at 374–75, 647 *A.2d* 1386 (citations omitted).]

█   The preference for exhaustion of administrative remedies is one of convenience, and "not an indispensable pre-condition." *Swede v. City of Clifton*, 22 *N.J.* 303, 315, 125 *A.2d* 865 (1956). *Accord Abbott v. Burke*, 100 *N.J.* 269, 297, 495 *A.2d* 376 (1985). Generally, the exhaustion rule will not be applied in the following

circumstances: (1) when only a question of law exists; (2) when administrative remedies would be futile; (3) when irreparable harm would result; (4) when jurisdiction of the agency is doubtful; or (5) when an overriding public interest calls for a prompt judicial decision. *Magliochetti, supra,* 276 *N.J.Super.* at 375, 647 *A.*2d 1386. However, even in cases involving only legal questions, jurisdiction should remain with the agency where the agency is in a special position to interpret its enabling legislation, can conclusively resolve the issue or issues, and can provide relief for the plaintiff. *Abbott, supra,* 100 *N.J.* at 298, 495 *A.*2d 376.

Plaintiffs argue on appeal that it would be futile to bring the matter to the State Lottery for adjudication, since it constructed the ambiguous language and has an inherent interest in ruling in its own favor. Plaintiffs characterize *Magliochetti, supra,* as a case in which the trial court "ruled that the exhaustion of administrative remedies was not required in light of the fact that the interpretation of a statute was at issue." 276 *N.J.Super.* at 365, 647 *A.*2d 1386. However, in *Magliochetti,* the Commissioner of Transportation did not have the ability to administratively determine the eminent domain issues, as such power was vested with the Law Division under the Eminent Domain Act. *Id.* at 366, 647 *A.*2d 1386.

Here, the Legislature has granted the State Lottery control over the economical operation and administration of the lottery, *N.J.S.A.* 5:9–7(a), and has also granted it the power to issue subpoenas to compel witness attendance and the production of documents. *N.J.S.A.* 5:9–10. The State Lottery has, in turn, under the rules for the game in question empowered its Director to render a final decision on the claims presented.

Plaintiffs nonetheless argue that "defendants lack the requisite expertise and most importantly objectivity to render a fair and impartial determination," and that the issue to be determined is one of contract law to be determined by the Law Division. Plaintiffs cite *Matawan Borough v. Monmouth County Tax. Bd.,* 51 *N.J.* 291, 240 *A.*2d 8 (1968), in which the Borough brought an

action against the County Board of Taxation maintaining that the Board's application of a statute was unconstitutional. *Id.* at 294, 240 *A.*2d 8. The Supreme Court held that the borough did not have to exhaust its administrative remedies because the "instant case includes the interpretation of a statute and a constitutional question, matters for which the courts are uniquely suited." *Id.* at 297, 240 *A.*2d 8. The Court also noted that use of "administrative expertise" would be an "idle gesture" because the administrative body "would be asked to declare illegal its own actions under the statute." *Ibid.*

In the present case, we are not dealing with a matter of statutory interpretation. Plaintiffs are questioning the interpretation and application of language crafted by the State Lottery. In our view, having the agency determine the issue would not be an "idle gesture," because as the motion judge noted, the Director might decide that there was confusion about the language on the ticket. If the Director were given the opportunity to resolve the matter with the plaintiffs, it could obviate the need to resort to the courts. *Laezza, supra,* 80 *N.J.* at 265, 403 *A.*2d 465.

Our Supreme Court in *Roadway Express, Inc. v. Kingsley,* 37 *N.J.* 136, 139, 179 *A.*2d 729 (1962), noted that there is a strong policy in favor of exhaustion of administrative remedies, and stated:

> we are not particularly concerned with the label or description placed on the issue but are concerned with the underlying considerations such as the relative delay and expense, the necessity for taking evidence and making factual determinations thereon, the nature of the agency and the extent of judgment, discretion and expertise involved, *and such other pertinent factors as may fairly serve to aid in determining whether, on balance, the interests of justice dictate the extraordinary course of by-passing the administrative remedies made available by the Legislature.*
>
> [*Id.* at 141, 179 *A.*2d 729 (citations omitted) (emphasis added).]

In *Driscoll v. Department of Treasury, Div. of Lottery,* 265 *N.J.Super.* 503, 627 *A.*2d 1167 (Law Div.1993), the judge observed that there "is little case law in New Jersey regarding the viability of a cause of action on behalf of a lottery ticket holder arising out of a statewide lottery scheme." *Id.* at 510, 627 *A.*2d

1167. The court further noted that the relationship arising out of the lottery system is primarily contractual in nature, and, from a contractual perspective, "the terms of the contract are subject to the lottery law, and the rules and regulations promulgated pursuant to that authority." *Ibid.* Therefore, "[t]he rights and obligations of the contracting parties arising out of a lottery ticket purchase cannot [ ] contravene the rules and regulations of the Commission." *Ibid.*

Plaintiffs, in purchasing the tickets, agreed to abide by the rules of the State Lottery. The rules provided, among other things, that "[a]ll determinations regarding prize awards are subject to the decision of the Director and all rules and regulations of the State Lottery Commission which apply to this game." Since the State Lottery created the tickets and the language thereon, it possesses the expertise involved in interpreting the language.

In balancing the pertinent factors as to whether to by-pass the available administrative remedy, we must also consider plaintiffs' contention that since the State Lottery has a "direct financial stake in the outcome," it could not render a fair and impartial ruling with respect to the interpretation of the bonus language on the tickets. In support of this argument, plaintiffs rely on *Karafa, supra,* 129 *N.J.Super.* at 501, 324 *A.*2d 97, and *Scott v. State,* 265 *N.J.Super.* 591, 598, 628 *A.*2d 379 (App.Div.1993).

In *Karafa, supra,* 129 *N.J.Super.* at 501, 324 *A.*2d 97, the plaintiff maintained he was the winner of the weekly lottery drawing, but was unable to produce his ticket. After the Lottery Director rejected plaintiff's claim, plaintiff brought an action in the Chancery Division. *Id.* at 501–02, 324 *A.*2d 97. The judge noted that the State Lottery had promulgated regulations governing the procedures and safeguards that must be followed in order to claim a prize, and that "[t]hese regulations, being substantive in nature, have the force and effect of law." *Id.* at 503, 324 *A.*2d 97. After analyzing the State Lottery Law, the judge dismissed plaintiff's complaint, as it failed to state a claim. *Id.* at 507, 324 *A.*2d 97.

Plaintiffs submit that as in *Karafa*, their case should receive judicial review because the issue involves a question of law which does not require the special expertise of the State Lottery. However, in *Karafa*, the judge specifically held that courts must follow the legislative mandate, and that "a lost lottery ticket may not be established by judicial declaration." *Id.* at 505, 324 *A.*2d 97.

In *Scott, supra,* 265 *N.J.Super.* at 594, 628 *A.*2d 379, a foster parent submitted a claim under the state-funded liability program seeking indemnification for the damage to her home suffered when a foster child left a hot iron on a bed. A claims investigator denied plaintiff's claim, and plaintiff appealed to the Attorney General. *Ibid.* After waiting fourteen months, plaintiff filed a complaint in the Law Division. *Ibid.* The judge denied the State's motion to transfer the matter to the Office of Administrative Law, and the State appealed arguing that plaintiff failed to exhaust administrative remedies. *Ibid.* We affirmed, stating:

> First of all, as a practical matter, she did everything she could to exhaust her administrative remedies. She followed the agency's instructions to appeal from an adverse decision to a deputy attorney general. She waited for a decision until further delay might have jeopardized her claim.... Secondly, the doctrine of exhaustion of administrative remedies assumes the existence of a valid administrative procedure, and we have rejected that assumption. Thirdly, in the absence of an express statutory or contractual exhaustion requirement, exhaustion of administrative remedies is not a prerequisite to a contract suit against the State under the Contractual Liability Act.
>
> [*Id.* at 598, 628 *A.*2d 379.]

In determining that there was no valid administrative procedure, we considered the liability program to have created a unilateral contract, and found that the State bound itself to indemnify plaintiff under the terms of the program. *Id.* at 596, 628 *A.*2d 379. Thus, in accordance with the New Jersey Contractual Liability Act, plaintiff had a statutory right to have her claim for indemnification heard in the Law Division. *Id.* at 598, 628 *A.*2d 379. We noted that the State could have established the program by administrative rules and could have provided for agency adjudication of claims. *Id.* at 597, 628 *A.*2d 379.

In the instant case, the State Lottery did specifically provide through the game rules that the Director would make all final decisions regarding the awarding of prizes, and ticket purchasers are bound by those rules. Therefore, plaintiffs are required to obtain a final determination by the State Lottery, before the matter may be appealed to this court under *Rule* 2:2–3(a)(2).

Upon consideration and balancing of all pertinent factors, we are convinced that the interests of justice do not require bypassing the administrative remedies available to plaintiffs. We, therefore, affirm the Law Division's dismissal of their complaint and remand directly to the Division of State Lottery for further proceedings to be scheduled by the Director of the Division.

Affirmed.