721 A.2d 298

HOWARD G. GOLDEN, PLAINTIFF–APPELLANT, v. COUNTY
OF UNION AND THE UNION COUNTY PROSECUTOR'S
OFFICE, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 8, 1998—Decided December 24, 1998.

Before Judges PRESSLER, KLEINER and STEINBERG.

*Richard S. Lehrich,* argued the cause for appellant (*Howard G. Golden, pro se,* on the brief).

*Paul L. Kleinbaum,* argued the cause for respondents (*Zazzali, Zazzali, Fagella & Nowak,* attorneys for Union County Prosecutor; *Jeremiah D. O'Dwyer,* Acting Union County Counsel, attorney for Union County; *Mr. Kleinbaum* and *Christine M. Nugent,* Deputy County Counsel, on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Plaintiff Howard G. Golden, an attorney at law of this State, brought this action against defendants, Union County Prosecutor and the County of Union, claiming that the summary termination of his employment as an assistant prosecutor by the then Prosecu-

tor, Andrew K. Ruotolo, Jr., since deceased, violated the procedural rights afforded him by the Manual of Administrative Policies and Procedures for Members of the Union County Prosecutor's Office (Manual), published and distributed in 1992. Plaintiff appeals from the summary judgment dismissing his complaint and from the denial of his motion for partial summary judgment adjudicating his right to the disciplinary procedures set forth in the Manual. We reverse.

Plaintiff had been employed by the Union County Prosecutor for some seventeen years when, on Friday, February 24, 1995, he was summarily dismissed. According to this record, the precipitating event was his having learned on that day that he was to be paired, as trial partners, with a relatively inexperienced assistant prosecutor whose competency he challenged. According to the intra-office memoranda on which the termination was apparently based, plaintiff made something of a scene in the office, loudly, abusively and with frequent resort to expletives, criticizing his proposed trial partner and the decision to pair him with her. The situation was exacerbated by the proposed trial partner having overheard the initial and intemperate exchange between plaintiff and the trial supervisor. In any event, a meeting was immediately convened, attended by the Prosecutor and First Assistant Prosecutor as well as the trial supervisor and the deputy trial supervisor, both of whom were present during plaintiff's outburst. After considering the impact of that incident as well as what was described as plaintiff's "past negative conduct," they determined that "dismissal was appropriate." At that point in the meeting, plaintiff was asked to join the Prosecutor, Assistant Prosecutor, and trial supervisor. The Prosecutor expressed his displeasure with plaintiff's conduct, and plaintiff responded with a litany of his grievances, chief among which was his belief in the incompetency of his proposed trial partner. The Prosecutor at that point told plaintiff to "pack his things and he would give him time with pay to find a job, but informed him he was not to come to the office Monday or any time thereafter." Plaintiff was retained on the payroll until March 24, 1995, one month later.

Plaintiff's timely request for a hearing was denied, and this action ensued. The gravamen of the complaint is that pursuant to *Woolley v. Hoffmann–La Roche,* 99 *N.J.* 284, 491 *A.*2d 1257, *as modified,* 101 *N.J.* 10, 499 *A.*2d 515 (1985), the Manual constituted a contractual undertaking by the Prosecutor, binding him to utilize the disciplinary procedures therein prescribed, thus precluding a summary dismissal. Defendants' response is that the *Woolley* doctrine, by which an employee manual may confer contractual rights on an employee, cannot apply to the assistant prosecutors because any such contract would be *ultra vires* in that it would impinge upon the Prosecutors' statutory authority, conferred by *N.J.S.A.* 2A:158–15, to employ assistant prosecutors at their pleasure. In so contending, defendants rely on *Walsh v. State,* 147 *N.J.* 595, 689 *A.*2d 131 (1997), *rev'g on Judge Skillman's dissent,* 290 *N.J.Super.* 1, 13, 674 *A.*2d 988 (App.Div.1996). We are in full accord with Judge Skillman's views and are in any case obliged to follow them by reason of the Supreme Court's acceptance thereof and its consequent dictate that in the absence of a countervailing statute, the Prosecutor cannot bargain away his unfettered right to hire and discharge assistant prosecutors. Nevertheless we conclude that *Walsh* is not dispositive here since it dealt with employees' substantive rights, not purely procedural rights, a distinction we find to be critical.

We address first the Manual. The initial inquiry is whether it would qualify as a contract under *Woolley* but for the *Walsh* problem. We have no doubt that it would. As the Supreme Court explained in *Witkowski v. Thomas J. Lipton, Inc.,* 136 *N.J.* 385, 392, 643 *A.*2d 546 (1994):

> An employment manual providing terms and conditions of employment that include grounds and procedures for dismissal can create an employment contract. This Court held in *Woolley* that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." 99 *N.J.* at 285–86, 491 *A.*2d 1257. Therefore, the Court ruled that the termination clause of

the company's employment handbook, including the procedure required before termination, could be contractually enforced.

The Court in *Woolley* explained that "[a] policy manual that provides for job security grants an important, fundamental protection for workers." *Id.* at 297, 491 A.2d 1257. In that case, the termination policy was "definite," *id.* at 305 n. 12, 491 A.2d 1257, "explicit and clear," *id.* at 306, 491 A.2d 1257, and provided "a fairly detailed procedure," *id.* at 287 n. 2, 491 A.2d 1257. Hence, the Court reasoned "job security provisions contained in a personnel policy manual widely distributed among a larger workforce are supported by consideration and may therefore be enforced as a binding commitment of the employer." *Id.* at 302, 491 A.2d 1257.

The key consideration in determining whether an employment manual gives rise to contractual obligations is the reasonable expectations of the employees. "When an employer of a substantial number of employees circulates a manual that, when fairly read, provides that certain benefits are an incident of the employment (including, especially, job security provisions)," courts should continue and enforce that manual "in accordance with the reasonable expectations of the employees." *Id.* at 297–98, 491 A.2d 1257.

The Manual here clearly meets that test, and defendants do not contend to the contrary. It was distributed, in numbered copies, to each Prosecutor's employee including assistant prosecutors, each employee was required to acknowledge its receipt as well as a full understanding and knowledge of its contents and to maintain and update it. By its own terms, it was made applicable to "every person who is employed by or assigned to the Prosecutor." Its stated purpose was to "define employee standards of conduct" and to definitively set forth "Administrative Policies, Procedures and Rules." Certainly, it gave rise to each employee's reasonable expectations respecting the conditions of employment and, indeed, was intended to do so. We are also satisfied that there is no conceptual impediment to the application of the *Woolley* doctrine to public employment. *See, e.g., Scott v. State,* 265 *N.J.Super.* 591, 596, 628 A.2d 379 (App.Div.1993); *Korostynski v. State, Div. of Gaming Enforcement,* 266 *N.J.Super.* 549, 630 A.2d 342 (App.Div. 1993). *Compare Cooper v. Mayor,* 299 *N.J.Super.* 174, 180, 690 A.2d 1036 (App.Div.1997) (holding that the terms of a salary ordinance took precedence over a *Woolley* contract).

■ The question then is whether the enforceability of the *Woolley* contract implicit in the Manual is affected by *N.J.S.A.*

2A:158–15.[1]  Resolution of this question requires us to look first at the disciplinary procedures prescribed by the Manual whose benefit plaintiff seeks.  Those procedures are set forth in Chapter 5 of the Manual.  Chapter 5, as we read it, is purely procedural.  It does not define the nature of conduct warranting any particular form of discipline.  It simply requires that, if the recommended discipline is more severe than an oral reprimand, there be a written report made to the Prosecutor, formal written charges be prepared and served on the employee together with a preliminary notice of disciplinary action, and a hearing be held by the Prosecutor or his designee not less than fifteen or more than thirty days following the service of the notice.  Appeal from any penalty imposed by the Prosecutor may then be "taken as provided by law."

We consider *Walsh* in the context of these prescribed procedures.  The precise issue in *Walsh* was whether a *Woolley* contract conferring a promotional right on an assistant deputy public defender was enforceable.  In concluding that it was not, Judge Skillman relied on *N.J.S.A.* 2A:158A–6, the Public Defender analogue of *N.J.S.A.* 2A:158–15.  Thus *N.J.S.A.* 2A:158–15 provides that "[a]ssistant prosecutors . . . may be appointed by the prosecutors . . . [and] shall hold their appointments at the pleasure of the respective prosecutors. . . ."  *N.J.S.A.* 2A:158A–6 provides that the Public Defender "shall appoint deputy public defenders and assistant deputy public defenders in such number as he shall require . . . [who] shall serve at the pleasure of the Public Defender."  Judge Skillman read *N.J.S.A.* 2A:158A–6 as creating a statutorily mandated at will employment relationship between the Public Defender and the deputies and assistant deputies, concluding, therefore, that "so long as his personnel actions are

---

[1] We note that even aside from the impact of *Walsh*, the disciplinary procedures of the Manual are expressly made subject to "the limitations set forth in existing law. . . ."  The issue, of course, remains the same, namely, whether the dictates of *N.J.S.A.* 2A:158–15 abrogate the disciplinary procedures of the Manual.

not invidiously discriminatory, the Public Defender has unfettered discretion in determining whether to hire, discharge, transfer, demote or withhold promotion from an Assistant Deputy Public Defender." 290 *N.J.Super.* at 13, 674 *A.*2d 988. The Supreme Court agreed.

The question then is whether the procedures of Chapter 5 of the Manual improperly impinge upon the congruent unfettered discretion of the Prosecutor accorded by *N.J.S.A.* 2A:158–15. We conclude that they do not. Most significantly, the Prosecutor's adherence to those procedures confer and has the capacity to confer absolutely no substantive job rights on the employee, unlike the case in *Walsh.* Chapter 5 does not prescribe any substantive limitation on the Prosecutor's exclusive disciplinary authority either by defining conduct eligible for any degree of discipline or by superimposing any conditions or standards on the Prosecutor's substantive disciplinary determination. Nor does it provide for any mediation or arbitration, and, clearly, in view of the scope of the Prosecutor's authority pursuant to *N.J.S.A.* 2A:158–15, there is no review of or appeal from the Prosecutor's unilateral decision. That is to say, the Manual's adoption of applicable provisions of law with respect to appeals must be read as incorporating *N.J.S.A.* 2A:158–15, pursuant to which there can be no appeal for at-will assistant prosecutors. Moreover, there is nothing in the disciplinary procedures interfering with the Prosecutor's right to suspend summarily an assistant prosecutor pending the hearing. Thus, all that the disciplinary procedures require is that the assistant prosecutor be notified of the charges against him and have a right to be heard thereon by the Prosecutor. We do not regard the holding of a hearing and the maximum thirty-day delay in effecting dismissal of a suspended employee as unduly compromising the Prosecutor's unfettered discretion, particularly in view of the countervailing considerations.

First, we do not regard the notice and hearing mechanism as a futile exercise even though the employee has no recourse from the Prosecutor's post-hearing decision. The opportunity to be

heard—the essence of procedural due process—is an important right. There may well be situations in which the charges against the assistant prosecutor are based on disprovable hearsay, or in which the employee's explanation may cast a different light on his conduct or on the Prosecutor's appraisal thereof, or in which the Prosecutor may realize after the hearing that he had acted over-hastily or in which the Prosecutor may conclude that a lesser disciplinary penalty is more appropriate.

Moreover, we recognize the general public policy favoring for-malized disciplinary procedures in the public sector. That policy was the reason for the 1982 amendment, by *L.* 1982, *c.* 103, § 1 of *N.J.S.A.* 34:13A–5.3, requiring negotiation of grievances and disci-plinary disputes. Indeed, relying on that policy, the Supreme Court in *Office of Employee Rel. v. Communications Workers,* 154 *N.J.* 98, 117, 711 *A.*2d 300 (1998), has held that with respect to a dismissed Assistant Deputy Public Defender serving at will pursu-ant to *N.J.S.A.* 2A:158A–6, the disciplinary procedures negotiated pursuant to *N.J.S.A.* 34:13A–5.3, including a right to arbitration and the consequent possibility of job restoration, take precedence over the Public Defender's unfettered discretion accorded by *N.J.S.A.* 2A:158–15, *Walsh* notwithstanding. We think it plain that the minimal incursion into the Prosecutor's unfettered discre-tion resulting from the notice and hearing requirements of Chap-ter 5 of the Manual are significantly less intrusive than the appeal and arbitration provisions of the collective negotiation agreement approved in *Office of Employee Rel.*

In sum, we conclude that Chapter 5 of the Manual is not inconsistent with *N.J.S.A.* 2A:158–15 or the *Walsh* interpretation of its Public Defender analogue because the Manual affords no substantive job rights and does not substantively impinge upon the Prosecutor's discretion and authority. Consequently, plain-tiff's request for a hearing as provided for by the Manual should have been granted. We are aware that over three years has passed since plaintiff's summary dismissal. But we are satisfied that neither that fact nor Prosecutor Ruotolo's intervening death

precludes the grant of a hearing now. Obviously it is the Prosecutor, as the incumbent of the office, who is bound by the Manual, not merely the individual who held the office at a particular time.

We reverse the summary judgment orders of the Law Division and remand to it for entry of an order requiring the Union County Prosecutor to afford plaintiff a hearing with respect to his dismissal in accordance with the Manual. Depending on the outcome of the hearing, plaintiff may make such further application to the Law Division as he regards appropriate.