749 A.2d 842

HOWARD GOLDEN, PLAINTIFF–RESPONDENT, v. COUNTY OF UNION AND THE UNION COUNTY PROSECUTOR'S OFFICE, DEFENDANTS–APPELLANTS.

Argued January 3, 2000—Decided May 9, 2000.

*Paul L. Kleinbaum* and *William T. Donegan* argued the cause for appellants (*Zazzali, Zazzali, Fagella & Nowak,* attorneys for Union County Prosecutor's Office and *Carol I. Cohen,* Union County Counsel, attorney for County of Union; *Mr. Kleinbaum, Mr. Donegan* and *Christine M. Nugent,* on the joint briefs).

*Richard S. Lehrich* argued the cause for respondent.

The opinion of the Court was delivered by

VERNIERO, J.

Plaintiff, Howard Golden, commenced this action challenging his discharge from the position of assistant county prosecutor in the Union County Prosecutor's Office. By statute, assistant prosecutors serve in their positions "at the pleasure of the respective prosecutors...." *N.J.S.A.* 2A:158–15. This appeal requires us to consider the interplay between that statutory provision and certain language contained in an employee manual in existence at the time of plaintiff's removal. The narrow issue is whether the prosecutor must conduct an internal hearing pursuant to the manual before discharging plaintiff or whether the statute allows for plaintiff's immediate dismissal.

The trial court found in favor of defendants, concluding that the manual's requirement of a hearing, if applied in this instance, would impermissibly infringe upon the prosecutor's statutory prerogatives. The Appellate Division disagreed, holding that the procedural aspects of the manual could be harmonized with the prosecutor's "unfettered right to hire and discharge assistant prosecutors." *Golden v. County of Union,* 317 *N.J.Super.* 64, 67,

721 *A*.2d 298 (App.Div.1998). The panel directed the prosecutor to conduct a hearing. *Id.* at 72, 721 *A*.2d 298. We granted defendants' petition for certification, and denied plaintiff's cross-petition involving the question of remedies, 160 *N.J.* 479, 734 *A*.2d 794 (1999). We now reverse.

## I.

Plaintiff was employed by Union County as an assistant prosecutor at the Union County Prosecutor's Office from 1977 to February 24, 1995, the day he was discharged. On that day, plaintiff reacted to a work assignment by delivering what another employee described as a "tirade." Specifically, plaintiff was assigned to work on a particular matter with a female colleague whom he regarded as inexperienced and unacceptable as a trial partner. The trial supervisor who observed plaintiff's reaction described it this way: "Golden ... exploded, his voice becoming louder, berating the new assignment and other matters, using expletives throughout this tirade. He then turned and left. His unprofessional conduct left me speechless." Unfortunately, the assistant prosecutor whose competency plaintiff questioned overheard the outburst.

Plaintiff's reaction was immediately reported to then Prosecutor Andrew K. Ruotolo, Jr. The prosecutor convened a meeting, attended by his senior aides, to review the matter. The trial supervisor summarized the meeting, stating "[i]t was clear a breach of professional conduct had occurred. There was a discussion about Golden's past negative conduct. It was then determined among those present dismissal was appropriate."

The prosecutor asked plaintiff to join the meeting, during which the prosecutor expressed his disapproval of plaintiff's conduct. Plaintiff responded with a litany of his own complaints, including his displeasure at being paired with the specific attorney. According to the deputy trial supervisor, who was also in attendance:

Inside the [prosecutor's] office, Prosecutor Ruotolo told Assistant Prosecutor Golden how upset he was to learn of the incident and what was said about [the

other assistant prosecutor]. Assistant Prosecutor Golden once again expressed his displeasure over his lack of raises; his assignments with respect to judges, trial partners and secretaries.... After some thought, the prosecutor turned to Assistant Prosecutor Golden and indicated he had heard enough. Assistant Prosecutor Golden was then told that his position was terminated.

The prosecutor afforded plaintiff thirty days to find a new job. He was terminated as of February 24, 1995, but remained on the payroll until March 24, 1995.

In April 1995, plaintiff's counsel asserted in a letter to defendants that plaintiff's discharge constituted a breach of an implied contract allegedly formed by the provisions of the Manual of Administrative Policies and Procedures for Members of the Union County Prosecutor's Office (the "employee manual" or "manual"). In support of that claim, plaintiff pointed to those provisions contained in section 5 of the manual establishing procedures (the "section 5 procedures") to be followed prior to an employee's removal. Those procedures include: that formal written charges be provided an employee subsequent to the prosecutor approving the recommended form of discipline; that a preliminary notice of disciplinary action be served on the accused employee; that a hearing be scheduled not less than fifteen or more than thirty calendar days after the date of service of the notice (a "section 5 hearing"); that the notice shall inform the employee of the right to be represented by counsel; that the hearing officer shall be the prosecutor or his designee; that the party charged, at his or her own expense, may bring a certified shorthand reporter to record the proceedings; and that a final notice of disciplinary action be issued at the conclusion of the process.

Plaintiff's request for a section 5 hearing was denied. Thereafter, plaintiff commenced this action by filing a complaint in the Law Division on January 22, 1997. The complaint alleges that the prosecutor's failure to abide by the section 5 procedures constituted a breach of contract. The complaint demands plaintiff's reinstatement to his prior position with back pay and interest or prospective lost wages, together with costs of suit and counsel fees.

Defendants filed nearly identical answers. The answers deny that a contract was formed between plaintiff and defendants and assert that the prosecutor had discretion to terminate plaintiff without conducting a hearing. The answers further assert that any restriction on the prosecutor's right to hire and discharge a member of his attorney staff would be void as against the public policy of the State. They claim that because plaintiff was an employee who served at the pleasure of the prosecutor pursuant to *N.J.S.A.* 2A:158–15, the manual's section 5 procedures do not apply to him.

Defendants also plead as an affirmative defense that the manual contains language sufficient to disclaim the formation of any contract. In that regard, the preface to the section 5 procedures contains this general statement:

> *General Statement*—Within the limitations set forth in existing law and applicable Civil Service law, the Office disciplinary authority and responsibility rests with the Prosecutor or his designee. Except for oral reprimands and emergency suspensions, Office discipline must be exercised or approved by the Prosecutor or his designee.

In essence, the pleadings assert that in referring to "the limitations set forth in existing law," the statement is consistent with defendants' belief that the section 5 procedures are not enforceable on these facts.

Both sides moved for summary judgment. In denying those motions, the trial court concluded that resolution of plaintiff's complaint would turn on whether plaintiff "had a reasonable expectation that the prosecutor by the promulgation of the manual ... was surrendering his right to terminate assistant prosecutors without notice and hearing." The trial court determined that resolution of that question would require testimony or further evidence and could not be resolved on a motion for summary judgment. Plaintiff filed a motion for reconsideration, arguing that the prosecutor's intent concerning whether the manual should apply to assistant prosecutors was a question of law and thus appropriate for summary disposition. The trial court denied that motion as well.

Subsequent to the disposition of those initial motions, this Court decided *Walsh v. State,* 147 *N.J.* 595, 689 *A.*2d 131 (1997), a case involving the Public Defender's failure to honor a purported agreement to promote a deputy public defender. A divided panel of the Appellate Division upheld the agreement; we reversed that judgment substantially for the reasons expressed in Judge Skillman's dissenting opinion. *Ibid.*

Similar to the statute at issue here, the statute in *Walsh* provided that any person appointed to the position of deputy public defender "shall serve at the pleasure of the Public Defender and shall receive such salaries as he shall from time to time designate." *N.J.S.A.* 2A:158A–6. In considering that statute, Judge Skillman reasoned that the promised promotion was unenforceable, stating "the Public Defender ... could not have made an enforceable agreement to promote plaintiff at some future date, because such an agreement would be inconsistent with the legislative mandate that all [a]ssistant [d]eputy [p]ublic [d]efenders serve at the pleasure of the Public Defender...." *Walsh v. State,* 290 *N.J.Super.* 1, 16, 674 *A.*2d 988 (1996)(Skillman, J.A.D., dissenting).

Following the disposition in *Walsh,* defendants filed a motion to dismiss, which the trial court granted by letter opinion dated June 9, 1997. In essence, the trial court determined that the *Walsh* rationale applied to the present case and that the issues should be resolved as a matter of law. The court concluded:

> The plaintiff argues that [t]he [m]anual should be read as affording an [a]ssistant [p]rosecutor an opportunity to be heard before the [p]rosecutor exercises his absolute right to discharge an [a]ssistant [p]rosecutor. If [t]he [m]anual were read in that fashion it would, at the very least, impede and delay the [p]rosecutor's statutory right to immediately terminate an [a]ssistant [p]rosecutor and it would open the door to protracted litigation as to whether there was strict adherence to provisions in [t]he [m]anual regarding notice, hearing, counsel and the like. Further, as stated earlier, [t]he [m]anual is unenforceable as it regards the termination of an [a]ssistant [p]rosecutor because the concept of an implied-in-fact contract in the at-will employment setting is not recognized when dealing with public officials.

As noted, the Appellate Division reversed. It concluded that the manual constituted an implied contract and thus ordered a section

5 hearing. *Golden, supra*, 317 *N.J.Super.* at 70, 721 *A.*2d 298. This appeal followed.

## II.

█ Central to the disposition of this matter is *N.J.S.A.* 2A:158–15, which provides in part:

Assistant prosecutors in and for the respective counties may be appointed by the prosecutors of such counties as hereinafter provided, *who shall hold their appointments at the pleasure of the respective prosecutors* and shall, before entering upon the performance of the duties of their appointments, take, before a judge of the Superior Court or the Clerk of the Superior Court of the county in and for which they are appointed, an oath or affirmation to faithfully perform the duties of the office to the best of their ability.

[Emphasis added.]

On its face, the statute unambiguously creates an at-will employment relationship between the prosecutor and all assistant prosecutors, including plaintiff. The issue is whether the statute compels us to sustain plaintiff's discharge or whether any other statute or principle of law would require defendant to conduct a section 5 hearing prior to imposing that discipline.

The reported cases that have touched upon the hiring and firing prerogatives of a county prosecutor have uniformly been resolved in favor of the prosecutor. Perhaps the clearest example is this Court's decision in *Cetrulo v. Byrne*, 31 *N.J.* 320, 157 *A.*2d 297 (1960). In that case, the Board of Chosen Freeholders of Essex County appointed the plaintiff to a legal assistant prosecutor position for an indefinite term. The incoming acting prosecutor sought the plaintiff's discharge. The plaintiff filed a complaint in lieu of prerogative writ, alleging that as a veteran of the armed services he was entitled to tenure pursuant to the provisions of the Veterans' Tenure Act. (That act generally provides procedural protections to employees who have served in the armed services. *N.J.S.A.* 38:16–1 to –4.) This Court upheld the plaintiff's discharge by citing, among other things, the earlier version of *N.J.S.A.* 2A:158–15, the relevant portion of which contained language nearly identical to its present text.

After reviewing the history of the prosecutor position from the time of New Jersey's 1776 Constitution, we observed:

> The Legislature as well as the courts have long recognized the strong policy considerations which dictate that since the county prosecutor is charged with heavy enforcement responsibilities he must be given broad powers to appoint his own personnel; thus he appoints his own assistant prosecutors and investigators within the maxima prescribed by statute.... Nowhere have we found any statutory language which supports the notion that an outside legislative agency such as the board of freeholders has the right to appoint assistants to the prosecutor, particularly legal assistants who are often entrusted with high enforcement responsibilities in the administration of justice comparable to those exercised by the prosecutor himself.

> . . . .

> [T]he plaintiff expressly acknowledges that "of necessity, for the proper functioning of these high offices the incumbent must have free [reign] to select and remove his very close associates, to whom he entrusts sensitive and private confidences."

> *[Cetrulo, supra,* 31 *N.J.* at 328–29, 332, 157 *A.2d* 297.]

*See also Casamasino v. City of Jersey City,* 158 *N.J.* 333, 346, 730 *A.*2d 287 (1999) (noting in summarizing *Cetrulo* that legal assistant prosecutor's "claim was rejected because an appointment to that position is personal to each prosecutor and because the Legislature intended to exclude a county prosecutor's confidential employees such as legal assistants from acquiring tenure under the [Veterans'] Tenure Act, *N.J.S.A.* 38:16–1").

Likewise, in *State v. Winne,* 12 *N.J.* 152, 96 *A.*2d 63 (1953), the Court recognized that the Legislature intended to confer wide latitude upon county prosecutors to enable them to discharge their responsibilities, including authority in respect of personnel decisions. As Chief Justice Vanderbilt noted on behalf of the Court:

> The statutes reflect not a sporadic intent but a fixed legislative policy to cast on the county prosecutor responsibility for the detection, apprehension, arrest and conviction of criminals in his [or her] county. Nor has the Legislature merely imposed duties of vast importance to the public on the county prosecutor. Not only has it seen to it that his [or her] office is staffed with assistant prosecutors, county detectives and county investigators. It has given him [or her] power not paralleled elsewhere in the county to incur expenses in "the detection, arrest, indictment and conviction of offenders" against the law....

. . . .

Clearly the Legislature intended to give [the prosecutor] dominant position and the primary responsibility for the enforcement of the criminal laws, not merely by conferring authority on him [or her] but by giving him [or her] the means of implementing such authority.

[*Id.* at 167, 96 *A.*2d 63.]

*See also Murphy v. Board of Chosen Freeholders of Bergen County,* 110 *N.J.L.* 9, 163 *A.* 555 (Sup.Ct.1932) (holding that county prosecutor has inherent power to appoint investigators in absence of express statutory authority).

■ Our recent decision in *Walsh, supra,* 147 *N.J.* 595, 689 *A.*2d 131, is consistent with the principle that public employers retain wide latitude in hiring and firing employees who serve in at-will, statutorily-created positions. Although briefly summarized above, the facts and holding in *Walsh* warrant additional discussion.

The *Walsh* plaintiff was employed as an assistant deputy public defender in the Public Defender's Bergen regional office from 1980 to 1986, during which he received at least two promotions. *Walsh, supra,* 290 *N.J.Super.* at 5, 674 *A.*2d 988. The plaintiff voluntarily left his public position to enter private practice. *Ibid.* Two years later, in 1988, the person in charge of the Public Defender's Hudson office invited the plaintiff to resume his public employment. *Ibid.* The plaintiff was offered a position at a level lower than the position he held in 1986 with the understanding that he would be quickly promoted to his prior senior position, conditioned only on his maintaining a satisfactory work record. *Id.* at 5–7, 674 *A.*2d 988. The plaintiff accepted the invitation and began work in July 1988. *Id.* at 7, 674 *A.*2d 988. Over the course of the next three years the plaintiff was denied three promotions. *Ibid.* The record indicated that the denials were due to a continuing freeze on promotions; no one disputed that the plaintiff "fully performed his duties in accordance with the high expectations of the parties." *Id.* at 6 n. 4, 7, 674 *A.*2d 988.

The plaintiff filed suit seeking damages for breach of the alleged oral agreement to promote him. The trial court ruled in favor of the plaintiff, finding " 'there was an offer. It was reasonably

understood by the plaintiff to be an offer. And he accepted [by] performance.'" *Id.* at 9, 674 *A.*2d 988. A divided panel of the Appellate Division affirmed. The majority concluded: "Only by enforcing the promise made by the commissioner's duly delegated representatives can defendants fulfill their obligations of good faith and fair dealings to [the plaintiff] in these circumstances." *Id.* at 12, 674 *A.*2d 988.

Judge Skillman disagreed. He concluded that in establishing an at-will relationship between the Public Defender and his or her deputies pursuant to *N.J.S.A.* 2A:158A–6, the Legislature intended to confer wide discretion on the Public Defender in respect of employment matters. He described the authority of the Public Defender as expansive in the personnel context, noting, "so long as his personnel actions are not invidiously discriminatory, the Public Defender has unfettered discretion in determining when to hire, discharge, transfer, demote or withhold promotion from an [a]ssistant [d]eputy [p]ublic [d]efender." *Id.* at 13, 674 *A.*2d 988. No voluntary promise by the Public Defender's Office could infringe upon that discretion. *Ibid.* The dissent disagreed with the contrary belief expressed by the majority, explaining:

> The majority's conclusion that subordinates of the Public Defender made an enforceable promise to promote plaintiff ... rests upon private sector employment decisions that "have been willing to recognize implied-in-fact contracts in the at-will employment setting." (maj. op. at 10, 674 *A.*2d at 993). *See Woolley v. Hoffmann–LaRoche, Inc.* 99 *N.J.* 284, 491 *A.*2d 1257 (1985). However, the relationship between an [a]ssistant [d]eputy [p]ublic [d]efender and the Public Defender, like the relationship between other public officials and the agencies appointing them, "is not *ipso facto* contractual in character," *Espinos v. Township of Monroe,* 81 *N.J.Super.* 283, 288, 195 *A.*2d 478 (App.Div.1963), but is instead controlled by the statutes pursuant to which the public official has been appointed.
>
> [*Id.* at 15, 674 *A.*2d 988.]

In a unanimous decision, we reversed the majority on the basis of Judge Skillman's dissent. *Walsh, supra,* 147 *N.J.* 595, 689 *A.*2d 131. As indicated, although the *Walsh* statute pertained to the Public Defender's Office, its operative language is similar to the text of the statute at issue here.

## III.

■ In support of his claim, plaintiff relies on the implied-contract doctrine recognized in *Woolley v. Hoffmann–La Roche, Inc.,* 99 *N.J.* 284, 491 *A.*2d 1257, *modified on other grounds,* 101 *N.J.* 10, 499 *A.*2d 515 (1985). That reliance is misplaced. In view of the clear statutory language establishing plaintiff's at-will employment status, it is not necessary for us to address whether a public agency may be bound by an implied contract or whether the manual here represented such a contract. The statute trumps whatever implied contract may have existed between the parties. *Walsh, supra,* 290 *N.J.Super.* at 15, 674 *A.*2d 988 (Skillman, J.A.D., dissenting); *see also DiPaolo v. Passaic County Bd. of Chosen Freeholders,* 322 *N.J.Super.* 487, 493, 731 *A.*2d 519 (App. Div.1999) (holding "that the public employment relationship derives from applicable statutory schemes and not from an independent contract between public employer and employee"), *aff'd o.b.,* 162 *N.J.* 572, 745 *A.*2d 540 (2000).

■ Similarly, we do not need to decide whether the preface to the section 5 procedures is sufficient to disclaim the formation of an implied contract. Prosecutors may not limit their statutory prerogatives by issuance of a manual, regardless of the manual's text. Drawing a distinction between the manual's "procedural" requirements and the prosecutor's "unfettered right" to discharge plaintiff, the Appellate Division concluded that the section 5 procedures could be enforced without unduly infringing upon the prosecutor's substantive rights. *Golden, supra,* 317 *N.J.Super.* at 70, 721 *A.*2d 298. The dissent joins in that conclusion. *Post* at 435, 749 *A.*2d at 850.

We disagree. Because the procedural and substantive issues are so interwoven, it is not possible to separate them in the context of this case. For example, requiring the prosecutor to engage in a lengthy process that includes the service of notice with built-in time delays and a formal hearing attended by adverse counsel, would limit his ability immediately to discharge a subordinate. That limitation would be contrary to the statute.

■ As another example, we note that the disciplinary measures set forth in the manual indicate that an employee may be discharged for a variety of infractions (*i.e.,* for cause), and that prior to the discharge, the prosecutor must conduct a hearing to determine that the infractions indeed occurred. Specifically, the manual defines the circumstances under which employees may be disciplined:

> Employees, regardless of title, shall be subject to progressive disciplinary action, according to the nature of the *offense.* For failure, either willfully or through negligence or incompetence, to perform the duties of their title or assignment; or for violation of any General Order, section of this manual; or for failure to obey any lawful instruction, order or command of a Supervisor or Superior Officer, the Prosecutor or his assistants. Disciplinary action in all cases will be decided on the facts of each case.

[Emphasis added.]

That language plainly provides that disciplinary action, including termination, may only be exercised if an employee has committed "an offense." Because *N.J.S.A.* 2A:158–15 allows for assistant prosecutors to be removed at will, the purported promises implying for-cause termination contradict the provisions of the statute. It follows as a matter of law that the section 5 procedures are inapplicable to assistant prosecutors, including the requirement of a formal hearing.

*State, Office of Employee Relations v. Communications Workers of America, AFL-CIO,* 154 *N.J.* 98, 711 *A.*2d 300 (1998), on which plaintiff also relies, is distinguishable. In that case, we upheld the enforcement of a statutory right to arbitration pursuant to employment negotiations under *N.J.S.A.* 34:13A–5.3, notwithstanding the separate statute permitting the Public Defender unfettered discretion to terminate deputies at will. The dispute touched upon the interplay between two statutory provisions, whereas the present case involves a single statute with no competing statutory scheme.

Plaintiff does not contend that he is entitled to disciplinary procedures under a collective bargaining agreement negotiated pursuant to statute or some other pertinent law. That being the

case, the principles enunciated in *Office of Employee Relations* do not control.

## IV.

We conclude that the principles espoused in *Walsh, Cetrulo,* and the other cases in this area, together with the plain language of the statute, require judgment in favor of defendants. Because the Legislature has unambiguously designated assistant prosecutors as at-will employees, the manual's provisions are not enforceable as applied to plaintiff.

Accordingly, we hold that, so long as his actions are not invidiously discriminatory or contrary to some other pertinent law, the prosecutor may discharge plaintiff without a formal hearing, in keeping with the at-will relationship established by statute. Plaintiff has made no allegation of discrimination, nor has he pointed to any countervailing statute in support of his claim. Thus, his discharge is sustained.

The Legislature's mandate as embodied in *N.J.S.A.* 2A:158–15 would be thwarted if prosecutors could, by an implied agreement contained in an employee manual, abrogate or otherwise encumber their statutory prerogatives. We interpret the section 5 procedures collectively to be such an encumbrance; thus, they must yield to prosecutorial authority established by the statute.

Prosecutors occupy the foremost role in the enforcement of laws within their respective counties, second only to the Attorney General. *N.J.S.A.* 52:17B–103 (providing Attorney General with express supervisory authority over county prosecutors); *Winne, supra,* 12 *N.J.* at 171, 96 *A.2d* 63. Commensurate with that role and responsibility, the Legislature has provided prosecutors with wide authority to structure, maintain, and manage their offices. *Cetrulo, supra,* 31 *N.J.* at 328, 157 *A.2d* 297; *Zamboni v. Stamler,* 199 *N.J.Super.* 378, 386 n. 3, 489 *A.2d* 1169 (App.Div.1985). That authority would be seriously compromised if implied contractual requirements were engrafted into the process of hiring and discharging subordinates.

Noting the value of allowing employees the opportunity to be heard before being discharged, the Appellate Division observed: "There may well be situations in which ... the [p]rosecutor may realize after the hearing that he [or she] had acted overhastily or in which the [p]rosecutor may conclude that a lesser disciplinary penalty is more appropriate." *Golden, supra,* 317 *N.J.Super.* at 71, 721 *A.2d* 298. Similarly, the dissent expresses the view that the "fair thing to do" would be for the prosecutor to "take the small amount of time that would be required at least to hear the assistant prosecutor's side of the case." *Post* at 437, 749 *A.2d* at 851.

In that regard, the record indicates that plaintiff was, in fact, afforded the opportunity to speak face-to-face to the prosecutor to relay "his side of the case." Although not required, the meeting that took place prior to the discharge allowed plaintiff to defend or explain his conduct. It also appears that the prosecutor acted in an informed manner, upon the advice of his senior staff, and was convinced that plaintiff's conduct warranted dismissal based on several eye-witness accounts. Although he did not follow precisely the section 5 procedures, the prosecutor did provide plaintiff a form of process, which, at a basic level, appears to have been fair. In addition, he offered the employee one month's grace to find other employment.

The Appellate Division and our dissenting colleagues also advance that a section 5 hearing would intrude only slightly on the operation of the Prosecutor's Office. However, it became clear at oral argument that plaintiff considers the remedy of a hearing to be part of only the first phase of this litigation. It appears that the plaintiff also wishes to pursue a claim for monetary damages in the "next phase" of what has already been a protracted suit. As part of his colloquy with the Court on the question of damages, plaintiff's counsel stated:

If the prosecutor should have followed the procedures and didn't—what flows from that? Well, that hasn't been briefed; it is not before the Court because it was never reached below. But our contention would be that clearly the Court can't, no court can simply turn its back to the fact that if indeed there was a contract, which

we believe there was, that if indeed there was a violation, that some damages would flow from that.... I do think that it's the next hurdle that Mr. Golden would have to deal with if he prevails here. And the courts below never reached that question. I think that it's something that will have to be faced if we get that far.... [The damages question would be] the next battleground.... I am concerned that the Appellate Division's remedy would be to go back to have the hearing now.... But it would put [plaintiff] in a situation which, pragmatically speaking, he could not possibly win. I think it's clear that the prosecutor now isn't going to say "oh yes, if this were presented five years ago, you would have prevailed."

The prospect of a "next battleground" convinces us that we are correct in our conclusion. The Legislature simply did not intend prosecutors to be encumbered in their personnel actions or to be exposed to monetary damages for the discharge of a supposedly at-will employee to the extent possible under the Appellate Division decision.

Lastly, it has been over five years since plaintiff's discharge. It is not disputed that even if forced to conduct a section 5 hearing, the prosecutor retains the sole discretion to discharge plaintiff. Prosecutor Ruotolo is now deceased and we were informed at oral argument that the manual itself has been rescinded. Additionally, the current prosecutor has made clear that plaintiff will not be rehired. The notion of rerunning the process at this late juncture has an air of futility to it. It is time for closure.

## V.

The judgment of the Appellate Division is reversed. The matter is remanded to the trial court for entry of judgment in favor of defendants.

O'HERN, J., dissenting.

The Court holds today that adherence to agreed-upon procedures, to afford assistant prosecutors a hearing before firing them, impermissibly infringes on a prosecutor's "unfettered right" to discharge from office an assistant prosecutor. *Ante* at 432, 749 A.2d at 848–49. I respectfully disagree primarily for the reasons stated by Judge Pressler in the opinion of the Appellate Division

reported at 317 *N.J.Super.* 64, 721 *A.*2d 298 (1998). Specifically, I agree that

> [m]ost significantly, the Prosecutor's adherence to [the Manual's] procedures confer and has the capacity to confer absolutely no substantive job rights on the employee, unlike the case in *Walsh.* Chapter 5 does not prescribe any substantive limitation on the Prosecutor's exclusive disciplinary authority either by defining conduct eligible for any degree of discipline or by superimposing any conditions or standards on the Prosecutor's substantive disciplinary determination. Nor does it provide for any mediation or arbitration, and, clearly, in view of the scope of the Prosecutor's authority pursuant to *N.J.S.A.* 2A:158–15, there is no review of or appeal from the Prosecutor's unilateral decision. That is to say, the Manual's adoption of applicable provisions of law with respect to appeals must be read as incorporating *N.J.S.A.* 2A:158–15, pursuant to which there can be no appeal for at-will assistant prosecutors. Moreover, there is nothing in the disciplinary procedures interfering with the Prosecutor's right to suspend summarily an assistant prosecutor pending the hearing. Thus, all that the disciplinary procedures require is that the assistant prosecutor be notified of the charges against him and have a right to be heard thereon by the Prosecutor. We do not regard the holding of a hearing and the maximum thirty-day delay in effecting dismissal of a suspended employee as unduly compromising the Prosecutor's unfettered discretion, particularly in view of the countervailing considerations.
>
> [*Id.* at 70, 721 *A.*2d 298.]

I add only these observations. To hold that a prosecutor cannot even agree to use fair procedures in discharging an assistant prosecutor sends the wrong message to county prosecutors in whom so much discretion is vested.

In its previous decisions, this Court has explained that agreed-upon "procedures for implementing substantive decisions ... pose no significant threat of interference with the public employer's ability to make substantive policy determinations." *Council of N.J. State College Locals v. State Bd. of Higher Ed.,* 91 *N.J.* 18, 33, 449 *A.*2d 1244 (1982)(*citing In re Local 195, IFPTE v. State,* 88 *N.J.* 393, 417, 443 *A.*2d 187 (1982)); *see also Bethlehem Township Bd. of Ed. v. Bethlehem Township Ed. Ass'n,* 91 *N.J.* 38, 47, 449 *A.*2d 1254 (1982) (distinguishing between evaluation criteria and evaluation procedures); *State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54, 90–91, 393 *A.*2d 233 (1978)(concluding that "promotional criteria are not mandatorily negotiable while promotional procedures are so negotiable"). Such procedures often have the beneficial effect of making the decision maker's ultimate

judgment a better one. *Local 195, supra,* 88 *N.J.* at 409, 443 *A.*2d 187.

We have always viewed a prosecutor as holding a unique position in the legal community whose duty is not just to obtain convictions "but to see that justice is done." *State v. Ramseur,* 106 *N.J.* 123, 320, 524 *A.*2d 188 (1987).

> Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts."
>
> [*Brady v. Maryland,* 373 *U.S.* 83, 87, 83 *S.Ct.* 1194, 1197, 10 *L.Ed.*2d 215, 218–19 (1963).]

In terms of justice, *"[a]udi alteram partem* [to hear the other side] is said to be 'certainly the oldest established principle in Anglo–American administrative law.'" Julian M. Joshua, *The Right to be Heard in EEC Competition Procedures,* 15 *Fordham Int'l L.J.* 16 (1991)(*quoting* Bernard Schwartz, *An Introduction to American Administrative Law* 105 (2d ed.1962)). What separates our system of law from all others is our unflinching insistence on the value of procedure. It is the "Due Process" of the law that is guaranteed by the Fifth Amendment, not any particular substantive right.

I realize that the prosecutor who made the agreement with his assistants has died, but I fail to understand why it is so burdensome that a successor prosecutor could not take the small amount of time that would be required at least to hear the assistant prosecutor's side of the case. That is the fair thing to do. Emerging democracies understand the value of fair procedure.

> The right to an administrative hearing is of paramount importance because it compels a decision-maker to see and hear the affected individual and confront that person's side of the dispute. As a result, a hearing may well forestall an incorrect decision or cause an agency to exercise discretion more favorably to the individual than it otherwise would have done. Beyond these utilitarian benefits, a hearing is important because it safeguards an individual's dignitary interest, treating that person as a human being....
>
> [Michael Asimow, *Toward a South African Administrative Justice Act,* 3 *Mich. J. Race & L.* 1, 6–7 (1997).]

The Court should not hold that a prosecutor cannot agree to be fair about implementing a decision to fire an assistant prosecutor.

STEIN, J., joins in this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices GARIBALDI, COLEMAN and VERNIERO—4.

*Dissenting*—Justices O'HERN and STEIN—2.