829 A.2d 1143

JANET JORDAN AND CAMDEN COUNTY SUPERIOR OFFICERS ASSOCIATION, PLAINTIFFS–APPELLANTS, v. LEE SOLOMON, CAMDEN COUNTY PROSECUTOR AND THE OFFICE OF THE CAMDEN COUNTY PROSECUTOR, DEFENDANTS RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted July 29, 2003—Decided August 21, 2003.

Before Judges STERN, LINTNER and HOENS.

*Uffelman Rodgers Kleinle & Mets,* attorneys for appellants (*Reed C. Kleinle,* on the brief).

*Frederick J. Schuck,* County Counsel, attorney for respondents (*M. Lou Garty,* First Assistant County Counsel, on the brief).

The opinion of the court was delivered by

HOENS, J.A.D.

Plaintiffs Janet Jordan and the Camden County Superior Officers Association appeal from the order of the Law Division judge dismissing their complaint for failure to state a claim on which relief may be granted. We reverse and remand.

Plaintiff Jordan was hired by the Camden County Prosecutor's Office in 1981 as an investigator and was promoted to senior investigator in 1992. She was promoted in October 1998 to the position of Sergeant II and transferred to the Grand Jury Unit thereafter. In November 1999, Jordan was summoned by defendant Lee Solomon, the Camden County Prosecutor, to a meeting at which she was served with a notice of disciplinary action setting

forth five separate charges against her and was summarily demoted to the lower grade of senior investigator.

The Camden County Superior Officers Association, which is the exclusive bargaining representative for all superior officers employed by defendants, including Jordan, filed a grievance with the prosecutor. That grievance was based upon the applicable collective bargaining agreement, which set forth a three-step grievance procedure, the final step of which, concededly, is an appeal to the prosecutor who was vested with the final decision. It was based as well, however, on the Standard Operating Procedures (SOPs) adopted by the prosecutor pursuant to that collective bargaining agreement, which identified a series of potential disciplinary infractions, including the ones with which Jordan was charged, and which established a system of progressive discipline.

On December 7, 1999, the prosecutor's office issued a memorandum to Jordan to the effect that the prosecutor was not inclined to alter his decision to demote Jordan summarily. On January 6, 2000, Jordan and her attorney met with the prosecutor to discuss Jordan's response to the allegations that had led to her demotion. In June 2000, the prosecutor issued a further decision declining to reinstate Jordan to the position from which she had been demoted.

Jordan and the Association filed suit alleging a variety of federal and state claims. The federal claims were dismissed by the federal court following removal of the complaint to that forum. Thereafter, the case was remanded for consideration of the state law claims and it is only the Law Division judge's dismissal of those state claims that is now before us.

The Law Division judge granted the defendants' motion and dismissed all of plaintiffs' state claims [1] on the ground that they

---

[1] While the order dismissed counts three through eight of the complaint, plaintiffs have addressed only those claims raised in counts five through eight, as a result of which we do not address counts three and four. *R.* 2:6–2; *see Howell Props., Inc. v. Township of Brick,* 347 *N.J.Super.* 573, 589–90, 791 *A.*2d 228, 237 (App.Div.), *certif. denied,* 174 *N.J.* 192, 803 *A.*2d 1163 (2002).

failed to state a claim on which relief may be granted. *R.* 4:6–2(e). The essence of his analysis was that the prosecutor had an unfettered statutory right to hire and fire investigators, including Jordan, that Jordan was an at-will employee subject to discipline or termination at any time and that the prosecutor's right to demote her could not be limited by the SOPs his office adopted setting forth a system of progressive discipline. We disagree.

The governing statute, *N.J.S.A.* 2A:157–10, unquestionably gives the prosecutor both the authority and the discretion to hire and fire county investigators, who serve at the pleasure of the prosecutor, providing in relevant part as follows:

> In addition to the office of county detective, there is created in the office of the prosecutor, the office or position of county investigator which shall be in the unclassified service of the civil service. The prosecutor of each of the several counties of this state may appoint such number of suitable persons, not in excess of the number, and at salaries not less than the minimum amounts, in this act provided, to be known as county investigators, to serve at his pleasure and subject to removal by him, and to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law.
>
> [*N.J.S.A.* 2A:157–10.]

Based on this statutory language and relying on decisions of this court and the Supreme Court construing analogous statutes, the motion judge determined that plaintiffs had failed to state a claim within the terms of the statute and he rejected their contention that the SOPs created a contract which limited the exercise of the prosecutor's discretion, concluding that such an analysis would be contrary to the clear language of the statute. The motion judge therefore held that none of the state law causes of action was cognizable.

As defendants point out, the clear language of the statute vests in the prosecutor wide discretion to remove individuals serving as county investigators. As defendants further point out, our Supreme Court has, in construing a similar statute respecting the position of assistant county prosecutors, *N.J.S.A.* 2A:158–15, held that an internal office manual and handbook did not create an implied contract pursuant to the *Woolley*[2] doctrine because the

---

[2] *Woolley v. Hoffmann–La Roche, Inc.,* 99 *N.J.* 284, 491 *A.2d* 1257, *modified on other grounds,* 101 *N.J.* 10, 499 *A.2d* 515 (1985).

statute "trumps whatever implied contract may have existed between the parties." *Golden v. County of Union,* 163 *N.J.* 420, 431, 749 *A.*2d 842, 848 (2000). Indeed, in *DeLisa v. County of Bergen,* 165 *N.J.* 140, 755 *A.*2d 578 (2000), the Court extended the principal holding of *Golden* to a county investigator as well. *Id.* at 148, 755 *A.*2d at 582. Similarly, defendants point out that the Supreme Court has held that a purported agreement by which a deputy public defender presumed to have a vested interest in a promotion right was also ineffective in the face of the applicable statute, *N.J.S.A.* 2A:158A–6, granting unfettered authority to the public defender over the terms of employment of his or her deputies. *Walsh v. State,* 147 *N.J.* 595, 689 *A.*2d 131 (1997). None of these decisions, however, addresses the issue we here confront, namely, whether the prosecutor, having agreed through collective bargaining to establish disciplinary procedures, must thereafter abide by those procedures. We think it plain that he must and that his alleged failure to do so sufficiently states a claim to meet the test of *R.* 4:6–2(e). *Printing Mart–Morristown v. Sharp Electronics Corp.,* 116 *N.J.* 739, 563 *A.*2d 31 (1989).

The Supreme Court specifically noted in *Golden* that the plaintiff there had no claim of any right to disciplinary procedures under a collective bargaining agreement and distinguished its own prior opinion respecting the balance of rights in that circumstance, *see State, Office of Employee Relations v. Communications Workers of Amer.,* 154 *N.J.* 98, 711 *A.*2d 300 (1998), as a result. *Golden v. County of Union, supra,* 163 *N.J.* at 432–33, 749 *A.*2d at 848–49. The Court in *Golden* therefore did not determine that the prosecutor's statutory right was inviolate, but implicitly recognized that it might give way to the extent the prosecutor has bargained those rights away during the collective bargaining process, as it appears he did in the circumstances before us.

Here, the allegations appear to fall within the exception the Court found worthy of note in *Golden.* Plaintiff Camden County Superior Officers Association is the relevant collective bargaining unit. The Public Employment Relations Commission (PERC) has

determined that discipline by prosecutors of investigators short of immediate termination can be the subject of collective negotiations, *Camden County Prosecutor and PBA, Local 316*, P.E.R.C. No. 96–32, 21 *NJPER* (¶ 26243 1995), a view with which we concur. Following that PERC decision, and after negotiations between that bargaining unit and the prosecutor, a series of SOPs was devised and adopted by the prosecutor.

While the SOPs themselves refer to their use to prevent minor disciplinary matters from becoming major matters through the imposition of progressive discipline, they plainly do not concern themselves only with minor matters of discipline. In fact, the list of possible infractions specifies which are major and which are minor but makes no distinction between them for purposes of imposing discipline. More to the point, the SOPs make no reservation of the right to impose discipline for major infractions to the prosecutor alone. Nor is the list of possible punishments limited to those that might only be appropriate for minor infractions. Rather, the list includes a progressively severe series of punishments, including demotion and termination. In these circumstances, the prosecutor has agreed through collective bargaining to implement a system of progressive discipline for investigators and has promulgated and distributed the procedures governing discipline to the affected staff. Having done so, he is bound to honor the disciplinary procedures he created.

Unlike *Golden*, we do not here address circumstances involving immediate termination and we need not therefore consider whether an infraction so serious that immediate termination is appropriate would remain within the statutory prerogative of the prosecutor notwithstanding the collectively bargained right. On the record before us, we disagree with the analysis of the trial judge that the complaint which sought relief on theories of contract and quasi-contract (counts five, six and seven), and on theories of due process arising out the lack of adherence to the adopted procedures for discipline (count eight), failed to state a claim.

We therefore reverse the order dismissing counts five, six, seven and eight of the complaint for failure to state a claim and we remand these counts for further proceedings.